# ORIGINAL

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
--------------------------------------------------------- x
In re:                                   :     Chapter 11
                                         :
WMC MORTGAGE, LLC,                       :     Case No. 19–10879 (CSS)
                                         :
                                         :     Re: Docket Nos. 6 & 8
                Debtor.¹                 :
--------------------------------------------------------- x
```

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION SECURED SUPER-PRIORITY FINANCING, (II) SCHEDULING A FINAL HEARING, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated April 23, 2019 (the "**Motion**")[2] of WMC Mortgage, LLC, as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), pursuant to sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, for entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**") authorizing the Debtor to:

(i)     obtain secured postpetition financing on a superpriority basis (the "**DIP Facility**") in an aggregate principal amount of up to $25,000,000, of which up to $750,000 shall be available upon entry of this Interim Order, pursuant to the terms and conditions of that certain Debtor-in-Possession Credit and Security Agreement, dated on or around April 24, 2019 (as amended, supplemented, restated, or otherwise modified from time to time, the "**DIP Agreement**"), by and among the Debtor and GE Capital US Holdings, Inc. (solely in its capacity as a post-petition lender pursuant to this Interim Order, the Final Order and the DIP Documents, "**Lender**"), substantially in the form attached to the Motion as Exhibit B;

---

[1] The last four digits of the Debtor's federal tax identification number are 2008. The Debtor's principal office is located at 6320 Canoga Avenue, Suite 1420, Woodland Hills, California 91367.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(ii)     execute and enter into the DIP Agreement and any related documents or instruments (collectively, the "**DIP Documents**"), and to perform such other and further acts as may be required under or in connection therewith;

(iii)    grant Lender security interests, liens, and superpriority claims (including superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code), and related protections to secure all obligations of the Debtor under and with respect to the DIP Facility as provided in this Interim Order, the DIP Agreement, and the DIP Documents;

(iv)     use the proceeds from the DIP Facility, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, for working capital and general corporate purposes only, including payment of professional fees and expenses, and other items in accordance with the budget annexed to this Interim Order as **Exhibit 1** (as the same may be modified from time to time with the consent of Lender, the "**Budget**"), subject to the Permitted Variance (as defined in the DIP Agreement);

(v)      modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and Lender to implement the terms of this Interim Order, the DIP Agreement, and the DIP Documents;

(vi)     waive any stay otherwise applicable pursuant to the Bankruptcy Rules and providing for the immediate effectiveness of this Interim Order; and

(vii)    schedule a final hearing (the "**Final Hearing**") on the Motion no later than thirty five (35) calendar days' after the entry of this Interim Order to consider entry of the Final Order authorizing the balance of the borrowings under the DIP Agreement and the DIP Documents on a final basis and approve notice procedures with respect thereto;

all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties (as defined below) in accordance with the Bankruptcy Rules and the Local Rules; and the Court having reviewed the Motion, the Asdourian Declaration and the

Ryan Declaration; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Interim Hearing**"); and upon the Asdourian Declaration, the Ryan Declaration, and the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate as contemplated by Bankruptcy Rule 4001(c)(2) and is in the best interests of the Debtor, its estate, its creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

      A.    <u>Commencement Date</u>. The Debtor commenced the chapter 11 case (the "**Chapter 11 Case**") on April 23, 2019 (the "**Commencement Date**"). The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

      B.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    <u>Notice</u>. The Debtor has provided notice of the Motion and the Interim Hearing to (i) the Office of the United States Trustee for the District of Delaware (Attn: Linda Richenderfer, Esq.), (ii) the holders of the twenty (20) largest unsecured claims against the Debtor, (iii) the Securities and Exchange Commission, (iv) the Office of the United States Attorney General, U.S. Department of Justice, (v) the Internal Revenue Service, (vi) the United States Attorney's Office for the District of Delaware, (vii) attorneys for Lender, (viii) all

3

financial institutions at which the Debtor maintains deposit accounts; (ix) all known parties with liens of record on assets of the Debtor as of the Commencement Date; and (x) any other party entitled to notice pursuant to Local Rule 9013–1(m) (collectively, the "**Notice Parties**").

D.     Under the circumstances, requisite notice of the Motion and the relief requested thereby has been provided in accordance with the Local Rules and the Bankruptcy Rules, and no further or other notice of the interim relief sought in the Motion or at the Interim Hearing is necessary or required.

E.     <u>Committee Formation</u>.  As of the date hereof, the U.S. Trustee has not appointed an official committee of unsecured creditors in the chapter 11 case pursuant to section 1102 of the Bankruptcy Code (a **"Creditors' Committee"**).

F.     <u>Findings Regarding DIP Facility</u>.

(1)     The Debtor has an immediate and critical need to obtain postpetition financing on an interim basis under the DIP Facility in order to, among other things, provide the Debtor with sufficient working capital to finance the administration of the Chapter 11 Case.  The Debtor's access to sufficient working capital and liquidity through the incurrence of the postpetition financing under the DIP Facility, pursuant to the terms of this Interim Order, is vital to the Debtor's orderly transition into chapter 11 and wind-down of existing operations.  Consequently, without interim access to the DIP Facility as provided in this Interim Order, the Debtor and its estate would suffer immediate and irreparable harm.

(2)     The Debtor is unable to obtain adequate credit on an unsecured basis or solely on the basis of an administrative expense claim under section 503(b)(1) of the Bankruptcy Code.  Further, the Debtor is unable to obtain adequate credit secured by (x) a senior lien on unencumbered assets of its estate under section 364(c)(2) of the Bankruptcy Code and/or (y) a

4

junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, from any

source other than Lender on terms more favorable than the terms of the DIP Facility. The Debtor

requires financing under the DIP Facility pursuant to the terms of this Interim Order to satisfy its

postpetition liquidity needs.

        (3)    Lender has indicated a willingness to provide the Debtor with certain

financing commitments on an interim basis, but solely on the terms and conditions set forth in

this Interim Order, the DIP Agreement, and the DIP Documents. After considering all of their

alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the

financing to be provided by Lender pursuant to the terms of this Interim Order, the DIP

Agreement, and the DIP Documents represents the best financing available to the Debtor.

        (4)    The DIP Facility has been negotiated in good faith, and all of the Debtor's

obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility,

the DIP Agreement, the DIP Documents, and this Interim Order shall be deemed to have been

extended by Lender in "good faith" (as that term is used in section 364(e) of the Bankruptcy

Code) and in express reliance upon the protections offered by section 364(e) of the Bankruptcy

Code, and Lender (and its successors and assigns) shall be entitled to the full protection of

section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision

hereof is vacated, reversed, or modified, on appeal or otherwise.

        (5)    The security interests and liens granted to Lender pursuant to this Interim

Order are appropriate under section 364(c) of the Bankruptcy Code because, among other things,

such security interests and liens do not impair the interests of any holder of Prior Liens (as

defined in the DIP Agreement).

(6)      Good cause has been shown for entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). In particular, the relief granted under the terms of this Interim Order, which authorizes the Debtor to execute the DIP Agreement and the DIP Documents and to obtain interim financing on the terms and conditions set forth in the DIP Agreement and the DIP Documents, is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

(7)      Entry of this Interim Order is in the best interest of the Debtor, its estate, and its creditors and is fair and reasonable under the circumstances, reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration.

G.      Based on the foregoing and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      <u>Approval of Motion</u>. The Motion is approved on the terms and conditions set forth in this Interim Order. This Interim Order shall become effective immediately upon its entry. To the extent the terms of the DIP Agreement or the DIP Documents differ in any respect from the terms of this Interim Order, this Interim Order shall control.

2.      <u>Approval of DIP Agreement and DIP Documents; Authority Thereunder</u>. The Debtor is authorized to enter into the DIP Agreement, the DIP Documents, and such additional documents, instruments, and agreements as may be reasonably required by Lender to implement the terms or effectuate the purposes of the DIP Agreement, the DIP Documents, and this Interim Order. The Debtor is authorized to borrow money under the DIP Facility on an

6

interim basis up to an aggregate principal amount not to exceed $750,000, in accordance with, and subject to the terms of, this Interim Order, the DIP Agreement, and the DIP Documents.

3.    Use of Proceeds of DIP Facility.  The Debtor is hereby authorized to use the proceeds of the DIP Facility during the Interim Period in accordance with the Budget, the DIP Agreement, the DIP Documents, and this Interim Order, (i) to fund working capital and for the general corporate needs of the Debtor in the ordinary course of business, (ii) for the payment of chapter 11 expenses, including the fees and expenses of professionals retained by the Debtor or a Creditors' Committee, if appointed, to the extent such fees and expenses are allowed by an order of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and (iii) for the payment of any prepetition payments authorized by the Bankruptcy Court pursuant to orders approving "first day" motions filed by the Debtor.

4.    Restrictions on Use of Proceeds of DIP Facility.  Notwithstanding anything herein to the contrary, no portion of the Carve-Out (as defined in Paragraph 13 below), any DIP Collateral (as defined in Paragraph 9 below), or any proceeds of the DIP Facility (including any disbursements set forth in the Budget or obligations benefitting from the Carve-Out) may be used by the Debtor, any Creditors' Committee or any other statutory committee or estate representative appointed in the Chapter 11 Case or any successor case, or any other person, party, or entity (including any of the Debtor's professionals, Creditors' Committee professionals or Creditors' Committee members) (or by any such party to pay any professional fees, disbursements, costs or expenses incurred in connection therewith): (i) to pay any amount on account of any claims arising prior to the Commencement Date unless such payments are (A) approved by an order of this Court (including hereunder) and (B) in accordance with the DIP Agreement, DIP Documents, and Budget; (ii) to request authorization to obtain postpetition loans

or other financial accommodations pursuant to section 364(d) of the Bankruptcy Code or

otherwise other than from Lender unless all DIP Obligations (as defined in Paragraph 7 below)

will be paid in full upon the consummation of such postpetition loans or other financial

accommodations, or seek any modifications to this Interim Order not approved by Lender; or

(iii) for any purpose adverse to or otherwise against the rights, remedies, or interests of Lender or

any of its current or former Affiliates (as defined in the DIP Agreement) (including, without

limitation, to prepare, investigate, assert, join, commence, support, or prosecute any claim,

counter-claim, action, proceeding, application, motion, objection, defense or other contested

matter or cause of action of any nature whatsoever against Lender or any of its current or former

Affiliates, assigns, or successors and the respective current or former officers, directors,

employees, agents, attorneys, representatives and other advisors of each of the foregoing, each in

their capacities as such (collectively, "**Lender's Related Parties**"), with respect to any

transaction, occurrence, omission, action or other matter (including formal or informal discovery

proceedings in anticipation thereof), including (A) any avoidance actions or other actions under

chapter 5 of the Bankruptcy Code, (B) any action with respect to the validity, enforceability,

priority, or amount of the DIP Obligations, or the validity, enforceability, extent or priority of the

DIP Liens (as defined in Paragraph 9 below), (C) any action seeking to invalidate, set aside,

avoid or subordinate, in whole or in part, the DIP Liens or any other protections afforded to

Lender under the DIP Agreement, the DIP Documents, or this Interim Order, (D) except to

contest in good faith the occurrence or continuance of any Event of Default (as defined in

Paragraph 20 below), any action seeking, or having the effect of, preventing, hindering, or

otherwise delaying Lender's assertion, enforcement, or realization on the DIP Collateral in

accordance with the DIP Agreement, the DIP Documents, and this Interim Order; and/or (E) any

RLF1 21154653v.1

action seeking to modify any of the rights, remedies, priorities, privileges, protections, and

benefits granted to Lender under the DIP Agreement, the DIP Documents, or this Interim Order,

without the prior written consent of Lender; provided, however, that this Paragraph 4 shall in no

way limit the use of Advances by the special committee of the Debtor's Board of Directors or the

Creditors' Committee to investigate any causes of action of any nature whatsoever against

Lender or Lender's Related Parties (but not to assert, join, commence, support, or prosecute any

claim, counter-claim, action, proceeding, application, motion, objection, defense or other

contested matter or cause of action against Lender or Lender's Related Parties).

     5.     Indemnification.  The Debtor is authorized and directed to indemnify

Lender against any liability arising in connection with the DIP Agreement or the DIP Documents

to the extent set forth in the DIP Agreement and the DIP Documents.  Any such unpaid

indemnities of Lender shall constitute DIP Obligations (as defined below) and shall be secured

by the DIP Collateral (as defined below) and afforded all of the priorities and protections

afforded to the DIP Obligations under this Interim Order, the DIP Agreement, and the DIP

Documents.

     6.     Validity of DIP Documents.  Upon execution and delivery of the DIP

Agreement or any DIP Document, the DIP Agreement and/or such other DIP Document shall

constitute valid and binding obligations of the Debtor, enforceable against the Debtor in

accordance with the terms thereof.  No obligation, payment, transfer, or grant of security under

the DIP Agreement, the DIP Documents, or this Interim Order shall be stayed, restrained,

voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-

bankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

9

7.      <u>Advances</u>.  All advances made to or issued for the benefit of (or deemed issued for the benefit of) the Debtor on or after the Commencement Date under the DIP Facility (each, an "**Advance**" and, collectively, the "**Advances**"), all interest thereon, and all fees, costs, expenses, indemnification obligations, and other liabilities owing by the Debtor to Lender under the DIP Agreement, the DIP Documents, and/or this Interim Order shall hereinafter be referred to as the "**DIP Obligations**."  The Advances: (i) shall bear interest payable at the rates set forth in the DIP Agreement or other applicable DIP Document; (ii) shall be secured with the rank and priority specified in paragraph 9 below; (iii) shall be payable in accordance with the terms of the DIP Agreement or the relevant DIP Document; and (iv) shall otherwise be governed by the terms set forth herein and in the DIP Agreement and the DIP Documents.

8.      <u>Voluntary Prepayments</u>.  The Debtor may make voluntary prepayments of any Advance or other DIP Obligations as and when provided under, and for application in accordance with, the terms of the DIP Agreement, the DIP Documents, and this Interim Order.

9.      <u>DIP Liens and DIP Collateral</u>.  As security for the full and timely payment of the DIP Obligations, Lender is hereby granted, pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, subject to the Carve-Out (as defined in Paragraph 13 below), valid, enforceable, unavoidable, and fully perfected security interests in and liens upon (collectively, the "**DIP Liens**") all pre- and postpetition property of the Debtors, whether existing on the Commencement Date or thereafter acquired, including, without limitation, all cash of the Debtor, any accounts receivable or other rights to payment whether arising before or after the Commencement Date, all of the rights of the Debtor under each Settlement Agreement (as defined in the DIP Agreement), including, without limitation, all "Reimbursement Obligations" (as defined in the applicable Settlement Agreement), together with all books and records, all

distributions, and the proceeds of all of the foregoing (collectively, the "**DIP Collateral**") prior and senior to all other security interests in and liens now existing or hereafter arising in favor of any other creditor or any other person whatsoever in the DIP Collateral and junior only to the Prior Liens; provided, however, that the DIP Collateral shall not include Excluded Property (as defined in the DIP Agreement); provided, further, however, that the DIP Collateral shall exclude Avoidance Actions (as defined in the DIP Credit Agreement), but subject only to and effective upon entry of the Final Order, the DIP Collateral shall include all proceeds of Avoidance Actions, whether by judgment, settlement or otherwise.

10.    Automatic Effectiveness of Liens.  The DIP Liens shall not be subject to challenge, dispute, or subordination and shall immediately upon entry of this Interim Order attach and become valid, perfected, enforceable, non-avoidable, and effective by operation of law as of the Commencement Date without any further action by the Debtor or Lender, and without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, or other documents or the taking of any other actions.  If Lender hereafter requests that the Debtor execute and deliver financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by Lender to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtor is authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and Lender is authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded on the Commencement Date.  A certified copy of this Interim Order may, in the discretion of Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such

11

financing statements, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

11.    <u>Lenders' Superpriority Claims</u>.  In addition to the liens and security interests granted to Lender pursuant to this Interim Order, subject to the Carve-Out and in accordance with sections 364(c)(1), 503, and 507 of the Bankruptcy Code, all of the DIP Obligations (including, without limitation, all Advances) shall constitute allowed superpriority administrative expense claims (the "**DIP Superpriority Claims**") with priority over any and all administrative expenses of the Debtor, whether heretofore or hereafter incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114, or any other provisions of the Bankruptcy Code.  The DIP Superpriority Claims shall be payable from and have recourse to all DIP Collateral (including, subject only to and effective upon entry of the Final Order, any proceeds of Avoidance Actions).

12.    <u>Termination of Commitment</u>.  The commitment of Lender to provide Advances shall terminate (with no further action of the Court required) and all amounts owing under the DIP Facility shall be due and payable on the earliest to occur of the following: (i) January 23, 2020; (ii) the consummation of an Acceptable Plan (as defined in the DIP Agreement), (iii) the receipt by the Debtor, counsel to the Creditors' Committee, and the U.S. Trustee of written notice (which notice may be delivered by facsimile or other electronic transmission) of the occurrence of an Event of Default hereunder or under the DIP Agreement or the DIP Documents and a determination by Lender to terminate its commitment (such notice, a "**Carve-Out Trigger Notice**"); (iv) the date of filing of any chapter 11 plan by the Debtor in the Chapter 11 Case which is not an Acceptable Plan (as defined in the DIP Agreement); and (v) if

the Debtor seeks or if there is entered (a) any modification or extension of this Interim Order without the prior written consent of Lender, and no such consent shall be implied by any other action, inaction, or acquiescence by Lender; (b) an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (c) an order dismissing the Chapter 11 Case; or (d) an order appointing a chapter 11 trustee in the Chapter 11 Case.

        13.    Carve-Out. Upon and following the delivery of a Carve-Out Trigger Notice, to the extent unencumbered funds are not available to pay administrative expenses in full, the DIP Liens, and the DIP Superpriority Claims shall be subject to the payment of the Carve-Out. For purposes of this Interim Order, the term **"Carve-Out"** shall mean, collectively: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code; (ii) in the event any Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $25,000; and (iii) following the delivery of a Carve-Out Trigger Notice, (x) all accrued and unpaid fees and expenses incurred by the persons or firms retained by the Debtor or any Creditors' Committee pursuant to an order of the Bankruptcy Court (or whose application for retention is then pending, provided such application is ultimately approved) (collectively, the **"Estate Professionals"**) incurred in accordance with the Budget prior to the Business Day following delivery of the Carve-Out Trigger Notice, plus (y) up to $500,000 in aggregate unpaid fees and expenses of Estate Professionals incurred on or after the date of delivery of the Carve-Out Notice, in each case with respect to clauses (x) and (y) to the extent such fees and expenses are allowed at any time by order of the Bankruptcy Court and regardless of whether allowed by interim order, procedural order, or otherwise; provided that the Carve-Out

shall not be available to pay fees and expenses incurred for any purpose specified in Paragraph 4 of this Interim Order.

14.    <u>Releases</u>.  Subject only to and effective upon entry of the Final Order, the Debtor, on behalf of itself and its successors and assigns, including a chapter 7 or chapter 11 trustee, has stipulated and is hereby deemed to: (i) release and discharge Lender (solely in its capacity as a post-petition lender pursuant to this Interim Order, the Final Order and the DIP Documents), together with its current and former agents, attorneys, employees, advisors, heirs, executors, administrators, officers, directors, affiliates, successors, and assigns (in each case, solely in their capacities as such), from any and all claims, causes of action, and remedies (whether under the Bankruptcy Code or other applicable law) arising out of, based upon or related to the DIP Agreement, the DIP Documents, the DIP Obligations, the DIP Collateral, and the DIP Liens; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, amount, and nonavoidability (under the Bankruptcy Code or otherwise) of the DIP Agreement, the DIP Documents, DIP Obligations, the DIP Liens, or the DIP Collateral.

15.    <u>Proofs of Claim</u>.  Lender will not be required to file proofs of claim or requests for administrative expenses in the Chapter 11 Case and, notwithstanding anything contained in this Interim Order, the provisions of this Interim Order related to the claims granted herein shall be deemed to constitute a timely filed proof of claim or request for administrative expense, as applicable.

16.    [RESERVED.]

17.    <u>Beneficiaries of Order</u>.  The provisions of this Interim Order shall be binding upon and inure to the benefit of Lender and the Debtor, and their respective successors

and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for

or on behalf of any Debtor's estate or with respect to such Debtor's property).

18.    Survival of Order.  The provisions of this Interim Order and any actions

taken pursuant thereto (i) shall survive the entry of any order: (a) confirming any chapter 11 plan

in the Chapter 11 Case; (b) converting the Chapter 11 Case to a case under chapter 7 of the

Bankruptcy Code; or (c) dismissing or transferring the Chapter 11 Case; and (ii) shall continue in

full force and effect notwithstanding the entry of any such order, and the claims, liens, and

security interests granted pursuant to this Interim Order shall maintain their priority as provided

by this Interim Order, the DIP Agreement, and the DIP Documents until all of the DIP

Obligations are indefeasibly paid in full and discharged in accordance with the terms of the DIP

Agreement and the DIP Documents. Unless agreed to by Lender, the DIP Obligations shall not

be discharged by the entry of any order confirming any chapter 11 plan in this Chapter 11 Case,

and the Debtor shall, and shall be deemed to, waive any such discharge pursuant to section

1141(d)(4) of the Bankruptcy Code.

19.    Protection under Section 364(e).  If any or all of the provisions of this

Interim Order are hereafter reversed, modified, vacated or stayed, Lender shall be entitled to all

of the rights, remedies, protections, and benefits granted under section 364(e) of the Bankruptcy

Code.

20.    Events of Default.  Except as otherwise provided in this Interim Order or

to the extent Lender may otherwise agree in writing, (i) any violation of any of the terms of this

Interim Order, or (ii) any occurrence of an "Event of Default" under the DIP Agreement or the

DIP Documents, as applicable, shall be deemed to be an **"Event of Default"** under this Interim

Order.

21.    <u>Dismissal</u>.  In the event that this Chapter 11 Case is dismissed pursuant to section 1112 of the Bankruptcy Code or otherwise, the DIP Liens and the DIP Obligations shall remain in full force and effect, with all rights and remedies attendant thereto.  If an order dismissing this Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (i) the superpriority claims, liens, and security interests granted to Lender pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations have been paid and satisfied in full (and that such superpriority claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall, to the extent permitted by applicable law, retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, and security interests.

22.    <u>Modification of Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit Lender to exercise, upon the occurrence and during the continuation of any Event of Default, all rights and remedies provided for in the DIP Agreement and the DIP Documents and to take any or all of the following actions without further order of or application to this Court: (i) immediately cease making any Advances to the Debtor; (ii) immediately declare all DIP Obligations to be immediately due and payable; and (iii) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Agreement, the DIP Documents or applicable law to effect the repayment of the DIP Obligations, in each case, in accordance with the and subject to the rights, limitations, and priorities set forth in this Interim Order, the DIP Agreement, and the DIP Documents; <u>provided</u>, <u>however</u>, that other than with respect to Section 7.1(o) of the DIP Agreement, Lender shall provide seven (7) calendar days

16

written notice (by facsimile, electronic mail, or overnight mail) to counsel to the Debtor, counsel to any Creditors' Committee, and the U.S. Trustee prior to exercising any lien enforcement rights or remedies with respect to the DIP Collateral (the "**Remedies Notice Period**").  During the Remedies Notice Period, the Debtor and any other party in interest may seek an emergency hearing before this Court to prevent Lender from exercising such rights and remedies; provided, however, that subject to entry of the Final Order, the Debtor may only contest at such hearing whether an Event of Default has occurred and/or is continuing.  The rights and remedies of Lender specified herein are cumulative and not exclusive of any rights or remedies that Lender may have under the DIP Agreement, the DIP Documents, or otherwise.  The Debtor shall cooperate fully with Lender in its exercise of rights and remedies in accordance with this Interim Order, the DIP Agreement, or the DIP Documents, whether against the DIP Collateral or otherwise.

> 23.    Limitations on Borrowings.  In further consideration for Lender's agreement to provide the DIP Facility, the Debtor, on behalf of itself and its estate, agrees that neither the Debtor nor any party acting on its behalf (including any Creditors' Committee) may seek authorization for the Debtor to borrow money from any person other than Lender to the extent that the repayment of such borrowings is to be (i) entitled to priority superior to, or *pari passu* with, the Superpriority DIP Claims; or (ii) secured pursuant to section 364(d)(1) of the Bankruptcy Code by a lien or security interest that is senior or equal to the liens and security interests held by Lender, unless the Debtor provides for the immediate indefeasible payment in full in cash of the DIP Obligations at closing in connection with such borrowings in accordance with and subject to the rights, limitations, and priorities set forth in this Interim Order, the DIP Agreement, and the DIP Documents.

24.    <u>Modifications of DIP Agreement and Budget</u>. The Debtor is authorized, without further order of this Court, to enter into agreements with Lender providing for any modifications or amendments to the Budget and any non-material modifications or amendments to the DIP Agreement or the DIP Documents, or of any other modifications or amendments to the DIP Agreement or the DIP Documents necessary to conform such documents to this Interim Order; <u>provided</u>, <u>however</u>, that any such modifications or amendments shall be provided to counsel to any Creditors' Committee and the U.S. Trustee. In addition, the Debtor shall provide notice of any material modifications or amendments to the DIP Agreement or the DIP Documents to counsel to any Creditors' Committee and the U.S. Trustee, each of whom shall have three (3) business days from the date of such notice within which to object in writing to such material modification or amendment. If no timely objection is made to any such material modification or amendment to the DIP Agreement or the DIP Documents, the Debtor may submit to the Court an order under certification of counsel approving such material modification or amendment. If the Creditors' Committee or the U.S. Trustee timely objects to any material modification or amendment to the DIP Agreement or the DIP Documents, the Debtor may request that the Court schedule a hearing (which may be sought on an expedited basis) to consider approval of such material modification or amendment.

25.    <u>Effectiveness of Order</u>. This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Commencement Date immediately upon entry of this Interim Order. Notwithstanding any Local Rule or Bankruptcy Rule, including, but not limited to Bankruptcy Rules 4001(a)(3), 6004(h), and 7062, this Interim Order shall be immediately

effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

26.    Control Person Liability.  Lender (solely in its capacity as a post-petition lender pursuant to this Interim Order, the Final Order and the DIP Documents) shall not, by reason of having made loans under the DIP Facility, be deemed in control of the operations or business of the Debtor.

27.    Lender's Prepetition Claims.  Lender asserts various secured and unsecured pre-petition claims against the Debtor.  Nothing in this Order prejudices Lender's rights to assert any prepetition claims against the Debtor or the Debtor's right to object to such claims.

28.    Section 552.  Subject to entry of the Final Order, Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Lender with respect to proceeds, products, offspring, or profits of any of its prepetition collateral or the DIP Collateral.

29.    Limitation on Charging Expenses against Collateral.  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction, or acquiescence of Lender.

RLF1 21154653v.1

30.     Final Hearing. The Final Hearing to consider the relief requested in the

Motion shall be held on _____*May 22*_____, 2019 at *2:00 pm* (prevailing

**Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the

Court, and served upon:  (i) the proposed attorneys for the Debtor, Richards, Layton & Finger,

P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:  Russell

C. Silberglied, Esq. and Paul N. Heath, Esq.); (ii) the U.S. Trustee (Attn: Linda Richenderfer,

Esq.); (iii) counsel for any statutory committee(s) appointed in the Chapter 11 Case; and

(iv) attorneys for Lender, Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, NY

10153 (Attn: Gary T. Holtzer, Esq. and Jacqueline Marcus, Esq.); in each case, so as to be

actually received **prior to 4:00 p.m. (prevailing Eastern Time) on** _____*May 15*_____,

**2019.** Any objections to any provisions of this Interim Order or the relief sought at the Final

Hearing by the Motion may be deemed waived unless timely filed and served in accordance with

this Paragraph 30.

31.     Retention of Jurisdiction. The Court shall retain jurisdiction to hear and

determine all matters arising from or related to the implementation, interpretation and/or

enforcement of this Interim Order.


Dated: April 24, 2019
          Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE

RLF1 21154653v.1