# EXHIBIT A

## Sponsor Settlement

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "***Agreement***") is made as of August 2, 2019, by and among (i) WMC Mortgage, LLC ("***WMC***" or the "***Debtor***"), (ii) General Electric Company ("***GEC***"), and (iii) GE Capital US Holdings, Inc. ("***GECUSH***" and together with GEC and each of their affiliates and subsidiaries (other than WMC), "***GE***").  WMC, GEC, and GECUSH are referred to collectively as the "***Parties***" and each individually as a "***Party***."

## <u>RECITALS</u>

A.    WMC, a Delaware limited liability company, currently is wholly-owned by GECUSH, a Delaware corporation.  GECUSH, in turn, is wholly-owned by GE Capital Global Holdings, LLC, which is wholly-owned by GEC.

B.    Prior to December 2, 2015, WMC was owned by General Electric Capital Corporation ("***GECC***"), a Delaware corporation, then a wholly-owned subsidiary of GEC.  GECC merged with and into GEC on December 2, 2015.

C.    Through its predecessors, WMC was engaged in originating, acquiring, and selling subprime residential mortgage loans on a wholesale basis until 2007 when it suspended its mortgage loan origination operations.

D.    On April 23, 2019, WMC commenced a voluntary case (the "***Chapter 11 Case***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***") to effectuate an orderly wind-down and liquidation of the Debtor, which will be implemented through a chapter 11 plan consistent with the terms and subject to the conditions set forth herein and in the proposed plan of liquidation attached hereto as **<u>Exhibit A</u>** (including any schedules and exhibits attached thereto) (the "***Plan***").

E.    In July of 2018, two independent directors were appointed to the board of directors of WMC (the "***Board***").  Also in July 2018, WMC formed a special committee of the Board consisting solely of the independent directors (the "***Special Committee***").

F.    The Special Committee's charter is, among other things, to investigate all potential claims and matters related to WMC's relationship with GE (collectively, the "***Potential Claims***") and, if appropriate, to prosecute, settle, release, discharge, or enter into any other agreement relating to the Potential Claims.

G.    Since its formation, the Special Committee has engaged in a thorough investigation of the Potential Claims, including discovery and review of approximately 2,000,000 documents.

H.    In February 2019, based on the results of this investigation, the Special Committee began negotiating with GE concerning the Potential Claims WMC may have against GE.

I.    GE denies (i) that any of the alleged Potential Claims has merit, (ii) any wrongdoing or liability with respect to any Potential Claim that the Debtor or any of the Debtor's creditors may or could assert against GE, and (iii) that GE has committed any violation of law or contract, acted in bad faith, or acted improperly in any way.

J.    The Parties believe it is desirable (i) to settle all outstanding disputes with respect to the Potential Claims to avoid the substantial expense, burden, and risk of protracted litigation and to fully and finally resolve any and all Potential Claims against GE that may or could be asserted, and (ii) to provide funds that will enable the Debtor to proceed with the Chapter 11 Case and obtain confirmation of the Plan.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    <u>**Certain Definitions**</u>.

As used in this Agreement, the following terms have the following meanings:

(a)    "*Alternative Transaction*" means any dissolution, winding up, liquidation, reorganization, recapitalization, assignment for the benefit of creditors, merger, transaction, consolidation, business combination, joint venture, partnership, sale, financing (debt or equity), plan proposal, or restructuring of the Debtor, other than the Plan.

(b)    "*Claim*" means a "claim" against the Debtor, as defined in section 101(5) of the Bankruptcy Code.

(c)    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan in the Chapter 11 Case.

(d)    "*Definitive Documents*" means any material documents (including any material related orders, agreements, instruments, schedules, or exhibits) that are described in or contemplated by this Agreement and the Plan, including (i) this Agreement, (ii) the Plan, (iii) the Disclosure Statement, (iv) the motion seeking approval by the Bankruptcy Court of the Disclosure Statement and the procedures for solicitation of votes on the Plan, (v) the Confirmation Order, and (vi) that certain settlement agreement, dated as of July 23, 2019, by and among the Debtor and TMI Trust Company, solely in its capacity as separate trustee, for itself and for the Securitized Asset Backed Receivables LLC Trust 2006-WM2.

(e)    "*DIP Credit Agreement*" means that certain Debtor-in-Possession Credit and Security Agreement, dated as of April 25, 2019, by and between the Debtor, as borrower, and GECUSH, as lender.

(f)    "*DIP Financing*" means that certain debtor-in-possession credit facility provided by GECUSH, in an aggregate principal amount not to exceed $25,000,000, providing for loans and advances to be made to the Debtor during the Chapter 11 Case pursuant to the terms and conditions of the DIP Credit Agreement.

(g)    "***Disclosure Statement***" means the disclosure statement for the Plan, as supplemented from time to time, and all exhibits, schedules, supplements, modifications, amendments, annexes, and attachments to such disclosure statement.

(h)    "***Effective Date***" means the date upon which all conditions to the effectiveness of the Plan have been satisfied or waived in accordance with the terms thereof and the Plan becomes effective.

(i)    "***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

(j)    "***Exit Financing***" means that certain credit facility, in an aggregate principal amount of $39,500,000, to be provided by GECUSH to WMC, with such financing to be secured by liens on any amounts due to WMC pursuant to or in connection with the Settlement Agreements (as defined in the DIP Credit Agreement) and any other remaining assets of WMC. Such exit financing shall have a 1.1% fee, payable solely out of the assets that secure the loan or the proceeds thereof.

(k)    "***GE Released Parties***" means, collectively, GEC, GECUSH, and each of their predecessors, successors, assigns, current and former subsidiaries (other than WMC) and affiliates, and such Persons' current and former officers, directors, principals, shareholders, members, partners, employees, managers, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

(l)    "***Interest***" means all shares, common stock or units, preferred stock or units, limited liability company or membership interests, or other instrument evidencing any fixed or contingent ownership in the Debtor, including any equity security (as defined in section 101(16) of the Bankruptcy Code) in the Debtor, whether or not transferable, and whether fully vested or vesting in the future, that existed immediately before the Effective Date.

(m)    "***Person***" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other Entity.

2.    **Agreements of GEC and GECUSH**.

(a)    **Settlement Amount**.  On the Effective Date of the Plan, GEC shall pay, or cause to be paid, to WMC $192,600,000 plus the total outstanding amount due under the DIP Financing as of the Effective Date (together, the "***Settlement Amount***") in full and final satisfaction of the Potential Claims.

(b)    **Exit Financing**.  On the Effective Date of the Plan, GECUSH shall provide, or cause to be provided, to WMC the Exit Financing.

(c)    **Claims**.  On the Effective Date, in consideration of the releases described in section 3(b) of this Agreement, GEC and GECUSH shall release (and cause their affiliates to release) any and all prepetition Claims against the Debtor, including approximately $93 million owed under various intercompany financing agreements.  For the avoidance of doubt, this section shall not release any postpetition Claim GE has against the Debtor, including any Claim related to the DIP Financing.

(d)    **Voting; Support**.  Each of GEC and GECUSH agrees that it shall (and shall cause its affiliates to):

 i.    vote or cause to be voted its Claims and Interests to accept the Plan by delivering its duly executed and completed ballot or ballots accepting the Plan by the Bankruptcy Court-ordered deadline;

 ii.    not change or withdraw (or cause to be changed or withdrawn) any such vote;

 iii.    timely vote (or cause to be voted) its Claims and Interests against any Alternative Transaction;

 iv.    not object to, delay, impede, or take any other action to interfere with acceptance or implementation of the Plan;

 v.    not directly or indirectly seek, solicit, encourage, propose, file, assist, support, participate in the formulation of, or vote for, any Alternative Transaction or otherwise take any action that is inconsistent with or that would reasonably be expected to prevent, interfere with, delay, impede, or postpone the consummation of the Plan; and

 vi.    not take any other action inconsistent with its obligations under this Agreement.

3.    **Agreements of the Debtor**.

(a)    **Plan**.  The Debtor shall incorporate, to the extent applicable, the terms of this Agreement, including section 3(b), into the Plan, and the Plan shall describe this Agreement as integral to, and not severable from, the Plan.  The Plan and the Disclosure Statement shall be reasonably acceptable to GE.  The Debtor shall consult in good-faith with GEC and GECUSH regarding the timing for seeking confirmation of the Plan and of the Effective Date.

(b)    **Plan Releases**.  Subject to the occurrence of the Effective Date, the Plan shall provide, in consideration for the obligations of GEC and GECUSH under this Agreement and the Plan and in consideration of any other agreements or documents to be entered into in connection with this Agreement or the Plan, that the Releasing Parties (as defined in the Plan) shall be deemed to forever release, waive, and discharge the GE Released Parties of and from any and all claims, causes of action, obligations, interests, suits, demands, damages, rights, losses, remedies, or liabilities whatsoever that have been or could be asserted against, or in any way relating to, or arising out of (i) the Debtor, its operations, its property, or the business or contractual

4

arrangements between the Debtor and any Released Party, (ii) the Potential Claims, (iii) the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, (iv) the Debtor's in- or out-of-court restructuring efforts, (v) any intercompany transactions, (vi) the Debtor's filing of the Chapter 11 Case, (vii) the formulation, preparation, dissemination, negotiation, filing, or consummation of (A) the Chapter 11 Case, (B) the Disclosure Statement, (C) the DIP Credit Agreement, (D) the TMI Settlement (as defined in the Plan), (E) this Agreement, (F) the Plan, or (G) any restructuring transaction, contract, instrument, release, or other agreement, instrument, or other document created or entered into in connection with the Disclosure Statement, the DIP Credit Agreement, the TMI Settlement, this Agreement, or the Plan, the filing of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, the distribution of property under the Plan or any other related agreement, or (viii) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

(c)     **Agreement Not to Sue**.  Upon execution of this Agreement, the Debtor, on behalf of itself and its estate, the Post-Effective Date Debtor, the Liquidating Trustee, and the Liquidating Trust (each as defined in the Plan), agrees not to sue and shall forbear from instituting or prosecuting any cause of action or proceeding of any kind, nature, or character, at law or in equity, against any of the GE Released Parties on account of, in connection with, or in any way related to the Potential Claims, except that WMC shall be entitled to take all appropriate steps, including instituting proceedings, to enforce this Agreement.  WMC's agreement not to sue shall terminate if this Agreement is terminated pursuant to section 8 hereof.

(d)     **Covenants**.  The Debtor agrees to:

i. not file any chapter 11 plan that is inconsistent with the terms and conditions set forth herein and in the Plan;

ii. do all things reasonably necessary and appropriate in furtherance of confirming and consummating the Plan in accordance with the terms of this Agreement;

iii. use commercially reasonable efforts to obtain any and all required regulatory and/or third-party approvals for the transactions embodied in the Plan, if any;

iv. not take any action inconsistent with, or intended or reasonably likely to interfere with, consummation of the Plan;

v. provide draft copies of the Definitive Documents to GEC and GECUSH, if reasonably practicable, at least three (3) business days prior to the date when the Debtor intends to file any such pleading or other document, and consult in good faith with GE regarding the form and substance of any such proposed filing with the Bankruptcy Court;

vi. timely file with the Bankruptcy Court a written objection to any motion filed with the Bankruptcy Court by a third party seeking the entry of an order (A) directing the appointment of an examiner with expanded powers

or a trustee, (B) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (C) dismissing the Chapter 11 Case, or (D) modifying or terminating the Company's exclusive right to file and/or solicit acceptances of a plan; and

vii.   not amend or modify, or file a pleading seeking authority to amend or modify, in a manner that is inconsistent with this Agreement, any of (i) the Definitive Documents, (ii) the final order of the Bankruptcy Court approving the DIP Financing, and (iii) the orders of the Bankruptcy Court approving the first day motions and second day motions.

(e)     **Acknowledgment**.  The Parties acknowledge that (i) the obligations being incurred by GEC and GECUSH pursuant to this Agreement are substantial, essential, integral, and necessary to facilitate the orderly wind-down and liquidation of the Debtor, and are in the best interests of the Debtor, its estate, and all of the Debtor's creditors and other stakeholders, and (ii) the benefits provided by GEC and GECUSH hereunder are expressly not being provided as a concession as to the validity of any Potential Claims.

4.      **No Admissions**.  The Parties understand and expressly acknowledge and agree that this Agreement is entered into solely in the interest of avoiding the expense and inconvenience of litigation.  Nothing in this Agreement, including the payment of the Settlement Amount, shall be construed as an admission or acknowledgment by GE of any liability or wrongdoing by GE or of the existence or viability of any Potential Claim.  Neither this Agreement, nor any of its terms or provisions, or any of the negotiations or proceedings conducted in connection with this Agreement, shall be offered or received in evidence in any action or proceeding of any kind other than such proceedings as may be necessary to consummate, defend, enforce, or give effect to this Agreement.

5.      **Tolling Agreement**.  The Parties reaffirm the rights and obligations set forth in that certain Tolling Agreement, entered into as of July 13, 2018 between the Special Committee and GECUSH (the "***Tolling Agreement***"), providing for the tolling of any deadline for the commencement or filing of any matter, proceeding, or action by the Special Committee on behalf of WMC against GE related to the Potential Claims.  The Parties agree that they shall not terminate the Tolling Agreement prior to the termination of this Agreement.

6.      **Definitive Documents; Good Faith Cooperation; Further Assurances**.  Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and to exercise commercially reasonable efforts with respect to, the pursuit, approval, negotiation, execution, delivery, implementation, and consummation of the Plan, as well as the negotiation, drafting, execution, and delivery of the Definitive Documents.  Furthermore, subject to the terms hereof, each Party shall take such action as may be reasonably necessary or reasonably requested by the other Party to carry out the purposes and intent of this Agreement and shall refrain from taking any action that would frustrate the purposes and intent of this Agreement.

7.      **Representations and Warranties**.  Each Party, severally (and not jointly), represents and warrants to the other Parties that the following statements are true, correct, and complete as of the date hereof:

(a)      such Party is validly existing and in good standing under the laws of its jurisdiction of incorporation or organization and, in the case of the Debtor, subject to the approval of the Bankruptcy Court, has all requisite corporate, partnership, limited liability company, or similar authority to enter into this Agreement and carry out the transactions contemplated hereby and perform its obligations contemplated hereunder, and the execution and delivery of this Agreement and the performance of such Party's obligations hereunder have been duly authorized by all necessary corporate, limited liability company, partnership, or other similar actions on its part; and

(b)      the execution, delivery, and performance by such Party of this Agreement does not and will not (i) violate any material provision of law, rule, or regulation applicable to it or any of its subsidiaries or its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries, or (ii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it or any of its subsidiaries is a party.

8.      **Termination of Agreement**.

(a)      **Termination by any Party**.  At any time after the occurrence and during the continuation of any of the following termination events, any Party may deliver a written notice of termination to the other Parties.  If such notice is sent, then this Agreement and the obligations of the Parties hereunder shall terminate three (3) business days after delivery of such notice unless otherwise agreed to by the Parties.

      i.   the Confirmation Order has not been entered by the Bankruptcy Court and become final and non-appealable by April 23, 2020;

      ii.   the Effective Date has not occurred by July 23, 2020;

      iii.   the Settlement Amount has not been paid by August 23, 2020; or

      iv.   a material breach of this Agreement by any of the non-terminating Parties hereto.

(b)      **Termination by GE**.  At any time after the occurrence and during the continuation of any of the following termination events, GE or GECUSH may deliver a written notice of termination to the other Parties.  If such notice is sent, then this Agreement and the obligations of the Parties hereunder shall terminate three (3) business days after delivery of such notice unless otherwise agreed to by the Parties.

      i.   the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code;

      ii.   an examiner with expanded powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code or a trustee or receiver is appointed in the Chapter 11 Case; or

       iii.   the occurrence of the "Event of Default" set forth in section 7.1(m) of the DIP Credit Agreement.

(c)    **Mutual Termination**.  This Agreement may be terminated by a written mutual agreement of the Parties.

(d)    **Effect of Termination**.  Upon the termination of this Agreement in accordance with this section 8, this Agreement shall forthwith become null and void and of no further force or effect and each Party shall, except as provided otherwise in this Agreement, be immediately released from its liabilities, obligations, commitments, undertakings, and agreements under or related to this Agreement and shall have all the rights and remedies that it would have had and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement, including all rights and remedies available to it under applicable law; *provided*, *however*, that in no event shall any such termination relieve a Party from liability for its breach or non-performance of its obligations hereunder prior to the date of such termination.

9.    **Amendments and Waivers**.  Except as otherwise expressly set forth herein, this Agreement may not be waived, modified, amended, or supplemented except with the prior written consent of all Parties.

10.    **Effectiveness**.  This Agreement shall become effective upon approval of the Bankruptcy Court.

11.    **Governing Law; Jurisdiction; Waiver of Jury Trial**.

(a)    This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof.

(b)    Each Party irrevocably agrees that any legal action, suit, or proceeding arising out of or relating to this Agreement brought by one of the Parties or its successors or assigns shall be brought and determined in any federal or state court sitting in the State of Delaware (the "**Delaware Courts**"), and each Party hereby irrevocably submits to the exclusive jurisdiction of the Delaware Courts for itself and with respect to its property, generally and unconditionally, with regard to any such proceeding arising out of or relating to this Agreement.  Each Party agrees not to commence any proceeding relating hereto except in the Delaware Courts, other than proceedings in any court of competent jurisdiction to enforce any judgment, decree, or award rendered by any Delaware Court.  Each Party further agrees that notice as provided in section 19 hereof shall constitute sufficient service of process, and the Parties further waive any argument that such service is insufficient.  Each Party hereby irrevocably and unconditionally waives and agrees not to assert by way of motion or as a defense, counterclaim, or otherwise, in any legal action, suit, or proceeding arising out of or relating to this Agreement, any claim (i) that it is not personally subject to the jurisdiction of the Delaware Courts as described herein for any reason, (ii) that it or its property is exempt or immune from jurisdiction of the Delaware Courts or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment, or otherwise), and (iii) that (A) a proceeding in any Delaware Court is brought in an inconvenient forum, (B) the venue of

such proceeding is improper, or (C) this Agreement, or the subject matter hereof, may not be enforced in or by such court.

        (c)     Notwithstanding anything to the contrary in this Agreement, including section 11(b) hereof, during the pendency of the Chapter 11 Case, all legal actions, suits, or proceedings relating to this Agreement shall be brought in the Bankruptcy Court.

        (d)     Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Agreement or the transactions contemplated hereby (whether based on contract, tort, or any other theory).

       12.    **Authorization**.  Each Party represents and warrants that the execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part; *provided, however,* that in the case of the Debtor, its performance hereunder is subject to Bankruptcy Court approval.

       13.    **Specific Performance/Remedies**.  It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and the non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (including attorneys' fees and costs) as a remedy for any such breach, without the necessity of proving the inadequacy of money damages as a remedy.  Each Party hereby waives any requirement for the security or posting of any bond in connection with such remedies.

       14.    **Headings**.  The headings of the sections, paragraphs, and subsections of this Agreement are inserted for convenience only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this Agreement.

       15.    **Successors and Assigns; Severability**.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, permitted assigns, executors, administrators, and representatives.  If any provision of this Agreement, or the application of any such provision to any Person or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full force and effect so long as the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.  Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

       16.    **No Third-Party Beneficiaries**.  This Agreement shall be solely for the benefit of the Parties and no other Person shall be a third-party beneficiary hereof, except that each GE Released Party shall be a third party beneficiary of the releases approved by the Bankruptcy Court pursuant to sections 3(b) and 3(c) of this Agreement and shall be entitled to enforce such provisions.

       17.    **Prior Negotiations; Entire Agreement**.  This Agreement, including the exhibits hereto, constitutes the entire agreement of the Parties, and supersedes all other prior negotiations,

with respect to the subject matter hereof and thereof, except that the Parties acknowledge that (i) all agreements concerning applicable statute of limitations, including the Tolling Agreement, executed between the Parties and (ii) any common interest, joint defense, or confidentiality agreement executed between the Parties, in each case prior to the execution of this Agreement, shall if still in effect at the time of this Agreement continue in full force and effect according to their respective terms.

18.    **Counterparts**.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this Agreement delivered by facsimile or PDF shall be deemed to be an original for the purposes of this paragraph.

19.    **Notices**.  All notices hereunder shall be deemed given if in writing and delivered by electronic mail, facsimile, courier, or by registered or certified mail (return receipt required) to the following addresses and facsimile numbers:

(a)    If to the Debtor, to:

The Special Committee of the Board of Directors
Attn: John Dubel and Michael Jacoby
Email: jdubel@dubel.com and mjacoby@phoenixmanagement.com

and

WMC Mortgage, LLC
6320 Canoga Avenue, Suite 1420
Woodland Hills, CA 91367
Attn: Mark Asdourian
Email: mark.asdourian@ge.com

With a copy to (which shall not constitute notice):

RICHARDS, LAYTON & FINGER, P.A
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Facsimile:  (302) 651-7701
Attention: Mark D. Collins, Esq. and Russell Silberglied, Esq.
Email: collins@rlf.com and silberglied@rlf.com

(b) If to either GEC or GECUSH, to:

GE Capital US Holdings, Inc.
901 Main Avenue
Norwalk, Connecticut 06851
Attention: Christopher D. Moore
Email: cmoore@ge.com

With a copy to (which shall not constitute notice):

Weil, Gotshal & Manages LLP
767 Fifth Avenue,
New York, NY 10153
Facsimile: (212) 310-8007
Attention: Gary Holtzer, Esq. and Jacqueline Marcus, Esq.
Email: gary.holtzer@weil.com and jacqueline.marcus@weil.com

Any notice given by delivery, mail, or courier shall be effective when received.  Any notice given by facsimile or electronic mail shall be effective upon oral, machine, or electronic mail (as applicable) confirmation of transmission.

20.    **Settlement Discussions**.  This Agreement is part of a proposed settlement of matters that could otherwise be the subject of litigation between the Parties.  Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rule of evidence, and any other applicable law, foreign or domestic, all negotiations relating to this Agreement shall not be admissible into evidence in any proceeding.

21.    **No Solicitation; Adequate Information**.  This Agreement is not intended, and shall not be deemed or construed to be, a solicitation for votes in favor of the Plan.  The votes of holders of Claims against or Interests in the Debtor will not be solicited until such holders who are entitled to vote on the Plan have received the Plan, the Disclosure Statement and related ballots, and other solicitation materials.  In addition, this Agreement does not constitute an offer to issue or sell securities to any Person, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

22.    **Interpretation; Rules of Construction; Representation by Counsel**.  When a reference is made in this Agreement to a section or exhibit, such reference shall be to a section or exhibit, respectively, of or attached to this Agreement unless otherwise indicated.  Unless the context of this Agreement otherwise requires, (i) words using the singular or plural number also include the plural or singular number, respectively, (ii) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement, (iii) the words "include," "includes," and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (iv) the word "or" shall not be exclusive and shall be read to mean "and/or."  The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

[Signature Page Follows]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

WMC Mortgage, LLC

By:_____
Name: John S. Dubel
Title: Chairman of the Special Committee

General Electric Company

By:_____
Name: Christopher D. Moore
Title: Authorized Signatory

GE Capital US Holdings, Inc.

By:_____
Name: Christopher D. Moore
Title: Vice President & General Counsel

*[Signature Page to Settlement Agreement]*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

WMC Mortgage, LLC


By:_____
Name: John Dubel
Title: Chairman of the Special Committee


General Electric Company


By:_ /s/ Christopher D. Moore_____
Name: Christopher D. Moore
Title: Authorized Signatory


GE Capital US Holdings, Inc.


By:_ /s/ Christopher D. Moore_____
Name: Christopher D. Moore
Title: Vice President & General Counsel

**<u>Exhibit A</u>**

**Plan**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---

‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐ x

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **WMC MORTGAGE, LLC,** | : | **Case No. 19–10879 (CSS)** |
| | : | |
| Debtor.[1] | : | |

‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐ x

---

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN.
THE DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

## CHAPTER 11 PLAN OF LIQUIDATION OF WMC MORTGAGE, LLC

---

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Zachary I. Shapiro (No. 5103)
Brendan J. Schlauch (No. 6115)
Christopher M. De Lillo (No. 6355)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700

*Attorneys for the Debtor and Debtor in Possession*

Dated:  August __, 2019
       Wilmington, Delaware

---

[1]    The last four digits of the Debtor's federal tax identification number are 2008.  The Debtor's principal office is located at 6320 Canoga Avenue, Suite 1420, Woodland Hills, California 91367.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ...................................................1
    A.    Defined Terms ...........................................................................................................1
    B.    Rules of Interpretation ............................................................................................11
    C.    The Plan Supplement .............................................................................................12

ARTICLE II. ADMINISTRATIVE EXPENSE, PROFESSIONAL FEE, ...........................................12

PRIORITY TAX AND DIP LOAN CLAIMS ...................................................................................12
    A.    Administrative Expense Claims ..............................................................................12
    B.    Professional Fee Claims .........................................................................................13
    C.    Priority Tax Claims ................................................................................................14
    D.    DIP Loan Claim .....................................................................................................14

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ...... 14
    A.    Summary ................................................................................................................14
    B.    Classification and Treatment of Claims and Equity Interests ................................15
    C.    Elimination of Vacant Classes ...............................................................................17
    D.    Special Provision Governing Unimpaired Claims ..................................................17

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ....................................................18
    A.    Presumed Acceptance of the Plan ..........................................................................18
    B.    Voting Classes .......................................................................................................18
    C.    Acceptance by Impaired Class of Claims ...............................................................18
    D.    Presumed Acceptance by Non-Voting Classes .......................................................18
    E.    Individual Creditor Voting Rights ..........................................................................18
    F.    Confirmation of the Plan pursuant to sections 1129(a)(10) and (b) of the Bankruptcy
           Code ......................................................................................................................18

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................19
    A.    General Settlement of Claims .................................................................................19
    B.    Sponsor Settlement and Funding of the Plan .........................................................19
    C.    The TMI Settlement ...............................................................................................20
    D.    Sources for Distributions ........................................................................................20
    E.    The Exit Financing .................................................................................................21
    F.    The Liquidating Trust ............................................................................................21
    G.    Rights and Powers of the Liquidating Trustee .......................................................22
    H.    The Liquidating Trust Expenses .............................................................................23
    I.    Retention of Professionals by Liquidating Trustee .................................................23
    J.    Periodic Reports to Be Filed by the Liquidating Trust ...........................................23
    K.    Directors, Officers, Managers, Members and Authorized Persons of the Debtor .........23
    L.    The Post-Effective Date Debtor .............................................................................23
    M.    Books and Records of the Debtor ...........................................................................25
    N.    Preservation of Privileges of the Estate and Debtor ...............................................25
    O.    Operations of the Debtor Between the Confirmation Date and the Effective Date .........25
    P.    Term of Injunctions or Stays .................................................................................25
    Q.    Cancellation of Equity Interests .............................................................................25

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .....................................................26
    A.    Initial Distribution Date .........................................................................................26
    B.    Disputed Claims Reserve .......................................................................................26

C.    Subsequent Distributions ................................................................................................27
D.    Record Date for Distributions ........................................................................................27
E.    Delivery of Distributions ...............................................................................................27
F.    Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement ..........29
G.    Time Bar to Cash Payments by Check ...........................................................................29
H.    Limitations on Funding of Disputed Claims Reserves ....................................................29
I.    Compliance with Tax Requirements ...............................................................................29
J.    No Payments of Fractional Dollars ................................................................................30
K.    Post-Petition Interest on Claims ....................................................................................30
L.    No Distribution in Excess of Allowed Amount of Claim .................................................30
M.    Setoff and Recoupment .................................................................................................30

ARTICLE VII. DISPUTED CLAIMS ...........................................................................................30
A.    No Distribution Pending Allowance ...............................................................................30
B.    Resolution of Disputed Claims .......................................................................................30
C.    Estimation of Claims ......................................................................................................31
D.    Disallowance of Claims ..................................................................................................31
E.    Adjustment to Claims Without Objection .......................................................................31
F.    Amendments to Claims or Equity Interests .....................................................................31

ARTICLE VIII. TREATMENT OF EXECUTORY CONTRACTS .................................................32
A.    Rejection of Executory Contracts ...................................................................................32
B.    Rejection Damages Claims .............................................................................................32
C.    Debtor's Insurance Policies ............................................................................................33
D.    Prepetition Settlement Agreements .................................................................................33

ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ..................................33
A.    Conditions Precedent to the Effective Date ....................................................................33
B.    Establishing the Effective Date .......................................................................................33

ARTICLE X. RELEASES, INJUNCTIVE AND RELATED PROVISIONS ...................................34
A.    Releases by the Debtor; Covenant Not to Sue ................................................................34
B.    Exculpation ...................................................................................................................35
C.    Third-Party Releases ......................................................................................................36
D.    Injunction .....................................................................................................................37
E.    Releases of Liens ...........................................................................................................37
F.    Preservation of Rights of Action ....................................................................................38

ARTICLE XI. RETENTION OF JURISDICTION .........................................................................39

ARTICLE XII. MISCELLANEOUS PROVISIONS .......................................................................41
A.    Payment of Statutory Fees .............................................................................................41
B.    Modification of Plan ......................................................................................................41
C.    Revocation of Plan .........................................................................................................41
D.    Successors and Assigns ...................................................................................................41
E.    Governing Law ...............................................................................................................41
F.    Reservation of Rights .....................................................................................................42
G.    Section 1146 Exemption .................................................................................................42
H.    Section 1125(e) Good Faith Compliance ........................................................................42
I.    Further Assurances .........................................................................................................42
J.    Service of Documents .....................................................................................................42
K.    Filing of Additional Documents .....................................................................................43
L.    No Stay of Confirmation Order ......................................................................................43
M.    Binding Effect ...............................................................................................................43
N.    Aid and Recognition ......................................................................................................43

ii

**TABLE OF EXHIBITS**

Exhibit A          Sponsor Settlement

Exhibit B          TMI Settlement

RLF1 21314091v.18

## DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION

Pursuant to title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, WMC Mortgage, LLC (the "**Debtor**") hereby respectfully proposes the following plan of liquidation under chapter 11 of the Bankruptcy Code.

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

A.   *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.   "*Administrative Bar Date*" means the deadline for a holder of an Administrative Expense Claim to file a request with the Bankruptcy Court for payment of such Administrative Expense in the manner indicated in Article II hereof, which shall be the first Business Day that is thirty days after service of the notice of the Effective Date.

2.   "*Administrative Expense Claims*" means Claims that have been timely filed before the Administrative Bar Date, pursuant to the deadline and procedure set forth herein (except as otherwise provided herein or by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services); and (b) all fees and charges assessed against the Estate under 28 U.S.C. §1930; *provided*, *however*, that the U.S. Trustee shall not be required to file a request for payment of fees and charges assessed against the Estate under 28 U.S.C. § 1930 before the Administrative Bar Date; *provided*, *further*, that all requests of Governmental Units for payment of Administrative Tax Claims shall not be subject to the Administrative Bar Date.   As used herein, the term "Administrative Expense Claims" shall exclude Professional Fee Claims.

3.   "*Administrative Tax Claims*" means Administrative Expense Claims by a Governmental Unit for taxes under section 503(b)(1)(B), (C) or (D) (and for interest and/or penalties related to such taxes) for any tax year or period, but only to the extent that all or any portion of such claim occurs or falls due within the period from and including the Commencement Date through and including the Effective Date.

4.   "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.   "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent

or unliquidated and as to which no contrary Proof of Claim has been filed; (b) a proof of Claim that has been timely filed and as to which no objection to allowance has been, or subsequently is, interposed by the Debtor, the Liquidating Trustee, the Post-Effective Date Debtor, or any other party-in-interest by the applicable Claims Objection Bar Date or as to which any objection has been determined by a Final Order in favor of the respective holder; (c) a Claim that is allowed: (i) in any stipulation with the Debtor, the Liquidating Trustee, or the Post-Effective Date Debtor, as applicable, executed prior to or following the entry of the Confirmation Order and, if necessary, approved by the Bankruptcy Court; or (ii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection with the Plan; or (d) a Claim that is expressly allowed pursuant to the terms of the Plan.

6. "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553, and 724(a) of the Bankruptcy Code.

7. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time, as applicable to the Chapter 11 Case.

8. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Case and, to the extent any reference made under section 157 of title 28 of the United States Code is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of such District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

9. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

10. "*Business Day*" means any day, other than a Saturday, Sunday or any other date on which banking institutions in New York, New York are required or authorized by law or executive order to close.

11. "*Cash*" means legal tender of the United States of America or the equivalent thereof.

12. "*Causes of Action*" means all claims, actions, causes of action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims of the Debtor and its Estate (including, without limitation, those actions set forth in the Plan Supplement) that are or may be pending on the Effective Date or instituted by the Liquidating

2

Trustee after the Effective Date against any Person, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

13. "*Chapter 11 Case*" means the chapter 11 case commenced when the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Commencement Date, which is administered under case number 19-10879 (CSS).

14. "*Claim*" means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtor.

15. "*Claims Objection Bar Date*" means the bar date for objecting to proofs of Claim or requests for payment of Administrative Expense Claims, which shall be 180 days after the Effective Date; *provided*, *however*, that the Liquidating Trustee (solely with respect to Claims in Class 4) or the Post-Effective Date Debtor (with respect to all other Claims) may seek by motion additional extensions of this date from the Bankruptcy Court.

16. "*Claims Register*" means the official claims register in the Debtor's Chapter 11 Case maintained by the Noticing Agent on behalf of the Clerk of the Bankruptcy Court.

17. "*Class*" means a group of holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

18. "*Class 4 Beneficiaries*" means holders of Allowed General Unsecured Claims in Class 4, whether or not such Claims were Allowed Claims on the Effective Date.

19. "*Class 4 Distribution*" means the sum of (a) $34 million in Cash, (b) the proceeds of the Retained Causes of Action, if any, and (c) any Excess Post-Effective Date Debtor Assets, *less* (x) the Liquidating Trust Expenses and (y) funds held in the Liquidating Trust Operational Reserve.

20. "*Commencement Date*" means April 23, 2019.

21. "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

22. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, and approving the Sponsor Settlement and the TMI Settlement in connection therewith pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

23. "*Debtor*" or "*Debtor in Possession*" means WMC Mortgage, LLC prior to the Effective Date.

24. "*DIP Credit Agreement*" means that certain Debtor-in-Possession Credit and Security Agreement, dated as of April 25, 2019, by and between the Debtor, as borrower, and the DIP Lender, as approved by the DIP Order, and as the same made be amended, modified, or amended and restated from time to time in accordance with its terms.

3

25. "*DIP Financing*" means the postpetition financing facility issued pursuant to the DIP Credit Agreement and the DIP Order in an aggregate principal amount not to exceed $25 million.

26. "*DIP Lender*" means GE Capital US Holdings, Inc. in its capacity as lender under the DIP Financing.

27. "*DIP Loan Claim*" means any and all Claims in respect of any DIP Obligations (as defined in the DIP Order) held by, or otherwise owing to, the DIP Lender that are outstanding as of the Effective Date.

28. "*DIP Order*" means the interim and final orders [Docket Nos. 29 and 77], in each case as amended, supplemented or modified from time to time, entered by the Bankruptcy Court authorizing and approving the DIP Financing.

29. "*Disbursing Agents*" means with respect to Distributions to holders of all Allowed Claims other than Allowed Class 4 – General Unsecured Claims, the Debtor or the Post-Effective Date Debtor, as applicable; and with respect to Distributions to holders of Allowed General Unsecured Claims, the Liquidating Trustee.

30. "*Disclosure Statement Order*" means the order approving the Disclosure Statement, which was entered by the Bankruptcy Court on [_____], 2019 [Docket No. ____].

31. "*Disclosure Statement*" means the *Disclosure Statement for the Chapter 11 Plan of Liquidation of WMC Mortgage, LLC*, dated as of [_____], 2019, prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time, including all exhibits, schedules, supplements, annexes, and attachments thereto.

32. "*Disputed*" means, with respect to any Claim, any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which the Debtor, the Post-Effective Date Debtor, or the Liquidating Trustee, as applicable, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by the Debtor, the Post-Effective Date Debtor, or the Liquidating Trustee, as applicable, in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order.

33. "*Disputed Claims Reserves*" means the reserves created pursuant to Article VI.B.1 of the Plan, including the reserve for Disputed Class 4 – General Unsecured Claims created and maintained by the Liquidating Trustee, and the reserve for Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Other Priority Claims, and Disputed Secured Claims created and maintained by the Post-Effective Date Debtor.

34. "*Distributions*" means the distributions to be made to holders of Allowed Claims as provided for in the Plan.

4

35. "*Effective Date*" means the date established pursuant to Article IX.B of the Plan, provided that no stay of the Confirmation Order is in effect.

36. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

37. "*Equity Interest*" means all shares, common stock or units, preferred stock or units, limited liability company or membership interests, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, and whether fully vested or vesting in the future, that existed immediately prior to the Commencement Date.

38. "*Estate*" means the estate of the Debtor created on the Commencement Date by section 541 of the Bankruptcy Code.

39. "*Excess Post-Effective Date Debtor Assets*" means any Post-Effective Date Debtor Assets remaining after payment and satisfaction of (or full reservation for) (a) the DIP Loan Claim, (b) all Allowed Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Secured Claims, and Other Priority Claims, (c) the TMI Claim, (d) all obligations under the Exit Financing, and (e) all Post-Effective Date Debtor Expenses.

40. "*Exculpated Parties*" means, collectively, the Debtor and the Sponsor and their respective current and former Affiliates, officers, directors, principals, members, partners, employees, managers, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and each of their respective heirs, executors, estates, and nominees, in each case in their capacity as such.

41. "*Executory Contract*" means any executory contract or unexpired lease as of the Commencement Date between the Debtor and any other Person or Persons.

42. "*Exit Financing*" means that certain credit facility, in an aggregate principal amount of $39,500,000, to be provided by the Sponsor to the Debtor on the Effective Date.  The Exit Financing shall be secured by liens on the Exit Financing Collateral.

43. "*Exit Financing Collateral*" means the Residual Assets and the Prepetition Settlement Agreements and all proceeds of the foregoing.

44. "*Exit Financing Documents*" means all documents and agreements related to the Exit Financing.

45. "*Exit Lender*" means the Sponsor, solely in its capacity as lender under the Exit Financing.

46. "*File*" or "*Filed*" means, with respect to any pleading, entered on the docket of the Chapter 11 Case and properly served in accordance with the Bankruptcy Rules.

47. "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for

5

reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

48. "*GE*" means General Electric Company and its Affiliates other than the Debtor.

49. "*GEC*" means General Electric Company.

50. "*General Bar Date Order*" means the *Order Establishing Bar Dates for Filing Claims*, which was entered by the Bankruptcy Court on May 17, 2019 [Docket No. 86].

51. "*General Bar Date*" means June 27, 2019 at 5:00 p.m. (Eastern Time), as established in the General Bar Date Order.

52. "*General Unsecured Claims*" means any Claim against the Debtor that arose or is deemed or determined by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Commencement Date and that is not:  (i) an Administrative Expense Claim, (ii) a Priority Tax Claim, (iii) a Secured Claim, (iv) an Other Priority Claim, (v) the TMI Claim; or (vi) an Intercompany Claim.  For the avoidance of doubt, General Unsecured Claims shall include Rejection Damages Claims.

53. "*Governmental Bar Date*" means October 21, 2019 at 5:00 p.m. (Eastern Time), as established in the General Bar Date Order for each and every Governmental Unit.

54. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

55. "*Impaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

56. "*Initial Distribution Date*" means the date on which the Liquidating Trust shall make its initial Distribution to the Class 4 Beneficiaries, which shall be a date selected by the Liquidating Trustee.

57.  "*Intercompany Claims*" means any Claim held by GE or any other Affiliate of the Debtor against the Debtor, including, for the avoidance of doubt, any Claim that would constitute a Secured Claim; *provided, however*, that Intercompany Claims shall not include the DIP Loan Claim or any Claim arising from the Exit Financing.

58. "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, which was entered by the Bankruptcy Court on May 20, 2019 [Docket No. 80].

6

59. "*Liquidating Trust*" means the trust established pursuant to Article V.F hereof and in accordance with the Liquidating Trust Agreement.

60. "*Liquidating Trust Agreement*" means that certain agreement establishing and delineating the terms and conditions of the Liquidating Trust, dated as of the Effective Date, as amended, supplemented or modified from time to time, the form of which shall be filed as part of the Plan Supplement.

61. "*Liquidating Trust Assets*" means $34 million in Cash and the Retained Causes of Action and all proceeds of the foregoing, and any Excess Post-Effective Date Debtor Assets when and if arising.

62. "*Liquidating Trust Expenses*" means the overhead and other operating expenses of the Liquidating Trust, including, but not limited to, the reasonable, documented fees and expenses of the Liquidating Trustee and the reasonable, documented fees and expenses of professionals retained by the Liquidating Trustee.

63. "*Liquidating Trust Fund*" means the fund to be established on the Effective Date pursuant to Article V.F of the Plan to hold the Liquidating Trust Assets.

64. "*Liquidating Trust Operational Reserve*" means the reserve established by the Liquidating Trustee to hold the amount of Cash deemed necessary to satisfy the anticipated future Liquidating Trust Expenses to the extent permitted under Revenue Procedure 94-45.

65. "*Liquidating Trustee*" means the person appointed by the Debtor in accordance with the Liquidating Trust Agreement to administer the Liquidating Trust.

66. "*Noticing Agent*" means Epiq Corporate Restructuring, LLC.

67. "*Other Priority Claim*" means any Claim that is accorded priority in right of payment under section 507(a) of the Bankruptcy Code that is not a Priority Tax Claim, an Administrative Expense Claim, or a Professional Fee Claim.

68. "*Other Secured Claim"* means any Secured Claim against the Debtor, other than a Priority Tax Claim or the DIP Loan Claim.

69. "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

70. "*Plan*" means this plan of liquidation under chapter 11 of the Bankruptcy Code, including all appendices, exhibits, schedules and supplements hereto, the Sponsor Settlement, and the Plan Supplement, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be.

71. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules and exhibits to the Plan, including the (i) Liquidating Trust Agreement, (ii) the identity

7

and, to the extent required by the Bankruptcy Code, compensation of the Liquidating Trustee, (iii) the identity and, to the extent required by the Bankruptcy Code, compensation of the Post-Effective Date Officer, (iv) the Post-Effective Date Debtor Organizational Documents, and (v) the Exit Financing Documents.

72. "*Post-Effective Date Debtor*" means the Debtor on or after the Effective Date.

73. "*Post-Effective Date Debtor Assets*" means all assets of the Debtor or of its Estate as of the Effective Date, including, without limitation, (a) all Cash on hand, (b) all rights under any order of the Bankruptcy Court, (c) the Residual Assets, (d) the Prepetition Settlement Agreements, (d) all tax refunds, (e) all accounts receivable, (f) all real property, mortgages, or other rights with respect to real property; (g) all furniture, fixtures, or equipment, (h) all proceeds of any of the foregoing received by any Person on or after the Effective Date, and (i) all of the Debtor's books and records relating to the foregoing; *provided, however*, that the Post-Effective Date Assets shall not include the Liquidating Trust Assets.

74. "*Post-Effective Date Debtor Expenses*" means the overhead and other operating expenses of the Post-Effective Date Debtor, including the reasonable, documented fees and expenses of the Post-Effective Date Officer and the reasonable, documented fees and expenses of professionals retained by the Post-Effective Date Debtor.

75. "*Post-Effective Date Officer*" means the Person selected by the Debtor, in its sole discretion, who shall serve as the sole officer, director, manager, member, and authorized Person of the Post-Effective Date Debtor.

76. "*Post-Effective Date Debtor Organizational Documents*" means the organizational documents of the Post-Effective Date Debtor that specify, among other things, the rights, duties and responsibilities of, and to be performed by, the Post-Effective Date Officer.

77. "*Potential Claims*" means any and all potential claims and causes of action of the Debtor and its Estate against GE, which are being settled and released pursuant to the Sponsor Settlement and the Plan.

78. "*Prepetition Settlement Agreements*" means "Settlement Agreements" as defined in the DIP Credit Agreement.

79. "*Priority Tax Claims*" means any secured or unsecured Claims of Governmental Units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

80. "*Pro Rata*" means the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims and Disputed Claims within such Class.

81. "*Professional*" means any Person employed pursuant to a Final Order in accordance with sections 327 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327 or 330 of the Bankruptcy Code; *provided, however,* that Professionals shall include ordinary course Professionals that were retained pursuant to the *Order Authorizing the Debtor to Employ and Compensate Professionals Utilized in the Ordinary Course of Business, Effective Nunc Pro Tunc to the Commencement*

8

*Date*, which was entered by the Bankruptcy Court on May 17, 2019 [Docket No. 63] solely to the extent such ordinary course Professionals are required to File fee applications pursuant to such order.

82. "*Professional Fee Claims*" means Claims of a Professional for fees and expenses (including hourly, transaction, and success fees) for services rendered by such Professional in the Chapter 11 Case.

83. "*Professional Fee Claims Bar Date*" means 5:00 p.m. (Eastern Time) on the date that is the first Business Day after the date that is forty-five days after the Effective Date.

84. "*Professional Fee Escrow Account*" means a bank account in an amount equal to the total estimated amount of Professional Fee Claims to be funded by the Debtor on the Effective Date.

85. "*Record Date*" means the record date for determining the entitlement of holders of Claims to receive Distributions under the Plan on account of Allowed Claims.  The Record Date shall be the Confirmation Date.

86. "*Rejection Damages Claim*" means a Claim for damages arising out of the rejection of an Executory Contract.

87. "*Related Parties*" means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former Affiliates (whether by operation of law or otherwise) and each of their respective subsidiaries, and such Person's current and former officers, directors, principals, shareholders, members, partners, employees, managers, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

88. "*Released Parties*" means, collectively: (i) GEC, (ii) the Sponsor, (iii) the Post-Effective Date Debtor, (iv) the Post-Effective Date Officer, (v) the Liquidating Trustee, (vi) the Liquidating Trust, and (vii) the respective Related Parties of each of the foregoing.

89. "*Releases*" means the Plan's release provisions set forth in Articles X.A and X.C hereof.

90. "*Releasing Parties*" means, collectively: (i) the Debtor; (ii) GEC; (iii) the Sponsor; (iv) the Post-Effective Date Debtor; (v) the Liquidating Trustee; (vi) the Liquidating Trust; (vii) all holders of Claims that vote in favor of the Plan, (viii) all other holders of Claims and Equity Interests unless such holder timely Files an objection to the third-party releases contained in Article X.C hereof and such objection is sustained by a Final Order by the Bankruptcy Court, and (ix) the Related Parties of each of the foregoing Persons.

91. "*Residual Assets*" means the Debtor's interest, as mortgagee, on certain real property located in Southampton, New York (commonly known as the Vandermulen residence), and amounts owing to the Debtor from Mortgage Electronic Registration Systems, Inc. ("*MERS*") on

9

account of the Debtor's prior equity interests in MERS that were the subject of a call option previously exercised by MERS.

92. "*Retained Causes of Action*" mean all Causes of Action other than those Causes of Action that are released, compromised and/or settled pursuant to Article X hereof, the Sponsor Settlement and the TMI Settlement.

93. "*Schedules*" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtor on May 21, 2019 and May 23, 2019, as may be amended.

94. "*Secured Claims*" means Claims that are secured (a) by a lien that is valid, perfected, and enforceable under the Bankruptcy Code or applicable non-bankruptcy law (1) as set forth in this Plan, (2) as agreed to by the holder of such Claim and the Debtor or the Post-Effective Date Debtor, or (3) as determined by a Final Order of the Bankruptcy Court, or (b) as a result of rights of setoff under section 553 of the Bankruptcy Code, but in any event only to the extent of the value determined in accordance with section 506(a) of the Bankruptcy Code of the holder's interest in the Debtor's interest in such property (unless an election has been made under section 1111(b) of the Bankruptcy Code on or prior to the confirmation of the Plan) or to the extent of an amount subject to such setoff, as applicable.  As used herein, the term "Secured Claims" shall exclude Intercompany Claims.

95. "*Solicitation Procedures Motion*" means the Debtor's motion for entry of an order (i) approving the Disclosure Statement, (ii) establishing the Voting Deadline, (iii) approving solicitation procedures, distribution of solicitation packages, and establishing a deadline and procedures for temporary allowance of Claims for voting purposes, (iv) approving the form of ballots and voting instructions, and (v) approving the form and manner of notice of the Confirmation Hearing and related issues.

96. "*Solicitation Procedures Order*" means an order of the Bankruptcy Court approving the Solicitation Procedures Motion.

97. "*Sponsor*" means GE Capital US Holdings, Inc., solely in its capacities as a (i) lender under the Exit Financing, (ii) lender under the DIP Financing, and (iii) party to the Sponsor Settlement.

98. "*Sponsor Settlement*" means the settlement agreement, dated as of August 2, 2019, by and among the Debtor, GEC, and the Sponsor that provides, among other things, that the Sponsor Settlement Amount shall be funded by GEC on the Effective Date in exchange for the Releases contained in the Plan and the Sponsor Settlement for the benefit of GE and the GE Related Parties, a copy of which is attached as <u>Exhibit A</u> hereto and incorporated by reference herein.

99. "*Sponsor Settlement Amount*" means $192,600,000.00 plus the total amount necessary to satisfy the DIP Loan Claim as of the Effective Date.

100.    "*Subsequent Distribution Date*" means the date(s) following the Initial Distribution Date on which the Liquidating Trust shall make one or more Distributions to the Class 4 Beneficiaries, which date(s) shall be selected by the Liquidating Trustee in his or her

business judgment; *provided*, *however*, that the Liquidating Trust shall to the extent economically feasible and reasonable make Distributions at least annually to the extent provided in the Liquidating Trust Agreement.

101.    "*TMI*" means TMI Trust Company, solely in its capacity as separate trustee of the TMI Trust.

102.    "*TMI Claim*" means any and all claims and causes of action against the Debtor that are the subject of the TMI Settlement.

103.    "*TMI Distribution Amount*" means $198 million.

104.    "*TMI Effective Date*" means the date on which the last to occur of the following has occurred:  (a) the Final Court Approval (as defined in the TMI Settlement) has occurred, (b) the REMIC Approval (as defined in the TMI Settlement) has occurred, and (c) the Effective Date has occurred.

105.    "*TMI Settlement*" means that certain settlement agreement, dated as of July 23, 2019, between the Debtor and TMI, a copy of which is attached as Exhibit B hereto and incorporated by reference herein.

106.    "*TMI Settlement Amount*" means $198 million in Cash.

107.    "*TMI Trust*" means Securitized Asset Backed Receivables LLC Trust 2006-WM2.

108.    "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

109.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

110.    "*Voting Deadline*" means [_____], 2019, or such date and time as may be set by the Bankruptcy Court.

B.    *Rules of Interpretation*

1.   For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings of Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the

11

interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

C.    *The Plan Supplement*

The Plan Supplement will be filed in substantially final form with the Bankruptcy Court no later than seven calendar days prior to the deadline to vote to accept or reject the Plan.  The Plan Supplement shall be available for inspection (i) at the Office of the Clerk of the Bankruptcy Court, (ii) at http://www.pacer.gov, or (iii) from the Noticing Agent website at *https://dm.epiq11.com/case/WMC/info.* Additionally, interested parties may obtain a copy of the Plan Supplement (including all exhibits contained therein), once filed, from the Debtor by email request to Brendan J. Schlauch, Esq. (schlauch@rlf.com).

# ARTICLE II.

## ADMINISTRATIVE EXPENSE, PROFESSIONAL FEE, PRIORITY TAX AND DIP LOAN CLAIMS

A.    *Administrative Expense Claims*

1.    Administrative Bar Date.

The Administrative Bar Date shall be thirty days after service of the notice of Effective Date.  Except as otherwise provided in the Plan or the Confirmation Order, on or before 5:00 p.m. (Eastern Time) on the Administrative Bar Date, each holder of an Administrative Expense Claim (to the extent such holder has not previously been paid) must File with the Bankruptcy Court a request for payment of such Administrative Expense Claim.

Any holder of an Administrative Expense Claim that is required to File a request for payment of such Administrative Expense Claim that does not File such request with the Bankruptcy Court by the Administrative Bar Date, shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claim against the Debtor, the Estate, the Liquidating Trust, the Post-Effective Date Debtor, and any of their assets and properties and such Administrative Expense Claim shall be deemed waived and released as of the Effective Date.

2.    Allowance of Administrative Expense Claims.

An Administrative Expense Claim, with respect to which a request for payment has been properly and timely filed pursuant to Article I.A.1 of this Plan, shall become an Allowed Administrative Expense Claim if no objection to such request is Filed by the Debtor or the Post-

12

Effective Date Debtor on or before thirty days after the Effective Date, or on such later date as may be fixed by the Bankruptcy Court. If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order or such Claim is settled, compromised, or otherwise resolved by the Debtor or the Post-Effective Date Debtor pursuant to Article VII.B of the Plan.

> 3.  Payment of Administrative Expense Claims.

Each holder of an Allowed Administrative Expense Claim shall receive, on the Effective Date or as soon as practicable thereafter, payment in full in Cash of the Allowed amount of such Claim (as determined by agreement or settlement or order of the Bankruptcy Court), or such other treatment as may be agreed upon by any such administrative expense claimant and the Debtor or the Post-Effective Date Debtor, as applicable; *provided*, *however*, that the U.S. Trustee shall not be required to file a request for payment of fees and charges assessed against the Estate under 28 U.S.C. § 1930 before the Administrative Bar Date; *provided*, *further*, that requests of Governmental Units for payment of Administrative Tax Claims shall not be subject to the Administrative Bar Date.

B.    *Professional Fee Claims*

All Professionals seeking awards by the Bankruptcy Court of Professional Fee Claims shall file, on or before the Professional Fee Claims Bar Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred, unless such deadline is extended for one or more Professionals by agreement of the Post-Effective Date Debtor. Any Professional Fee Claim not Filed by the Professional Fee Claims Bar Date (or such later date as may be agreed upon by the Post-Effective Date Debtor) in accordance with this Article II.B shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Estate, the Post-Effective Date Debtor, the Liquidating Trust, or any of the Post-Effective Date Debtor Assets or the Liquidating Trust Assets, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim. Subject to the provisions of sections 330(a) and 331 of the Bankruptcy Code, the Post-Effective Date Debtor shall pay each holder of an Allowed Professional Fee Claim the full unpaid amount of such Allowed Professional Fee Claim in Cash no later than five Business Days after the date that such Claim is Allowed by order entered by the Bankruptcy Court.

On the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account. The Debtor shall fund the Professional Fee Escrow Account with Cash equal to the Professionals' good faith estimates of the Professional Fee Claims. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estate, the Liquidating Trust and/or the Post-Effective Date Debtor, but shall, after all Allowed Professional Fee Claims have been irrevocably paid in full, be available to the Post-Effective Date Debtor to pay any other Post-Effective Date Debtor Expenses, and then be paid to the Liquidating Trust and constitute Excess Post-Effective Date Debtor Assets. The Professional Fee Escrow Account shall be held in trust for the Professionals retained by the Debtor and for no other parties until all Allowed Professional Fee Claims have been irrevocably paid in full. Fees owing to the applicable Professionals shall be paid in Cash to such Professionals from funds held in the

13

Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court or authorized to be paid under the Interim Compensation Order; *provided, ho*wever, that the Post-Effective Date Debtor's obligations with respect to Professional Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Professional Fee Escrow Account.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy any Allowed Professional Fee Claims owing to the Professionals as of the Effective Date, such Professionals shall have Allowed Administrative Expense Claims for any such deficiency, which shall be satisfied in accordance with the Plan.  No liens, claims, or interests shall encumber the Professional Fee Escrow Account (or the funds therein) in any way.

C.      *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, on the later of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or as soon as practicable thereafter, payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or order of the Bankruptcy Court), or such other treatment as may be agreed upon by any such priority tax claimant and the Debtor or the Post-Effective Date Debtor, as applicable.

D.      *DIP Loan Claim*

The DIP Loan Claim shall be an Allowed Claim.  Except to the extent that the DIP Lender agrees to less favorable treatment, in full and final satisfaction, settlement, release and discharge of the Allowed DIP Loan Claim, on the Effective Date, to the extent not paid prior thereto, the DIP Loan Claim shall be indefeasibly paid in full in Cash.  Contemporaneously with the foregoing payment, the DIP Financing Facility, and the "Loan Documents" as defined in the DIP Credit Agreement shall be deemed cancelled, all commitments under the DIP Documents shall be deemed terminated, all liens on property of the Debtor relating to the DIP Financing shall automatically terminate, and all collateral subject to such liens shall be automatically released, in each case without further action by the DIP Lender; *provided, however,* that any provisions of the "Loan Documents" governing the DIP Financing that by their terms survive the payoff and termination of such facility shall survive in accordance with the terms of the Loan Documents.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.      *Summary*

1.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified the DIP Loan Claim, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, as described above in Article II.  Accordingly, except for Administrative Expense Claims, Priority Tax Claims, and the DIP Loan Claim, all Claims against and Equity Interests in the Debtor are placed in Classes as set forth below.

14

2.  The following table classifies Claims against and Equity Interests in the Debtor for all purposes, including voting, confirmation, and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim/Equity Interest | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | TMI Claim | Impaired | **Entitled to Vote** |
| 4 | General Unsecured Claims | Impaired | **Entitled to Vote** |
| 5 | Intercompany Claims | Impaired | Agreed to Vote to Accept the Plan |
| 6 | Existing Equity Interests | Impaired | Agreed to Vote to Accept the Plan |

B.    *Classification and Treatment of Claims and Equity Interests*

1.  Class 1 — Secured Claims

(a)    *Classification*:  Class 1 consists of Secured Claims.

(b)    *Treatment*:  In full and complete satisfaction of their Allowed Secured Claims, each holder of an Allowed Secured Claim shall receive, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Secured Claim becomes an Allowed Claim, or as soon as practicable thereafter, either (i) such treatment as such Class 1 claimant and the Debtor or the Post-Effective Date Debtor, as applicable, agree, or (ii) at the option of the Debtor or the Post-Effective Date Debtor, as applicable:  (x) payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or order of the Bankruptcy Court), or (y) treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.  For the avoidance of doubt, any Intercompany Claim that would constitute a Secured Claim shall be treated solely as a Class 5 – Intercompany Claim.

(c)    *Voting*:  Class 1 is Unimpaired and, in accordance with section 1126(f) of the Bankruptcy Code, each holder of a Secured Claim is conclusively deemed to have accepted the Plan and, therefore, is not entitled to vote on the Plan.

15

2.   <u>Class 2 — Other Priority Claims</u>

(a)      *Classification*:  Class 2 consists of Other Priority Claims.

(b)      *Treatment*:  In full and complete satisfaction of their Allowed Other Priority Claims, each holder of an Allowed Other Priority Claim shall receive, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Priority Claim becomes an Allowed Claim, or as soon as practicable thereafter, either (i) such treatment as such Class 2 claimant and the Debtor or the Post-Effective Date Debtor, as applicable, agree, or (ii) at the option of the Debtor or the Post-Effective Date Debtor, as applicable:  (x) payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or order of the Bankruptcy Court), or (y) treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy.

(c)      *Voting*:  Class 2 is Unimpaired and, in accordance with section 1126(f) of the Bankruptcy Code, each holder of an Other Priority Claim is conclusively deemed to have accepted the Plan and, therefore, is not entitled to vote on the Plan.

3.   <u>Class 3 — TMI Claim</u>

(a)      *Classification:*  Class 3 consists of the TMI Claim.

(b)      *Treatment*:  In full and complete satisfaction of the TMI Claim, on the TMI Effective Date, the TMI Trust shall receive payment of the TMI Settlement Amount pursuant to and in accordance with the TMI Settlement.  In the event the TMI Settlement is terminated pursuant to section 2.09 thereof, in full and complete satisfaction of the TMI Claim, the Post-Effective Date Debtor shall make payment of the TMI Distribution Amount in Cash to the TMI Trust in accordance with the payment instructions provided by TMI as soon as reasonably practicable after such termination, but not prior to the Effective Date.

(c)      *Voting*:  Class 3 is Impaired, and TMI is entitled to vote to accept or reject the Plan.

4.   <u>Class 4 — General Unsecured Claims</u>

(a)      *Classification*:  Class 4 consists of General Unsecured Claims.

(b)      *Treatment*:  In full and complete satisfaction of their Allowed General Unsecured Claims, on the Initial Distribution Date, each holder of an Allowed General Unsecured Claim shall receive payment in Cash in an amount equal to such Claim's Pro Rata share of the amount of the Class 4 Distribution available for distribution, or such less favorable treatment as may be agreed upon by such Class 4 claimant and the Liquidating Trustee.  From time to time thereafter, each holder of an Allowed General Unsecured Claim shall receive on any Subsequent Distribution Date, its Pro Rata share of the amount of the Class 4 Distribution available for distribution, as determined by the Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement.

16

(c)    *Voting:*  Class 4 is Impaired, and each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

5.   Class 5 — Intercompany Claims

(a)    *Classification:*  Class 5 consists of Intercompany Claims.

(b)    *Treatment:*  Pursuant to the terms of the Sponsor Settlement, each holder of an Intercompany Claim has agreed to waive and release such Claim, and will not receive a Distribution under the Plan.

(c)    *Voting:*  Class 5 is Impaired and will neither retain nor receive any property under the Plan. Notwithstanding the foregoing and section 1126(g) of the Bankruptcy Code, subject to the terms of the Sponsor Settlement, GEC (whose Affiliates are the only holders of Intercompany Claims) has agreed to cause its Affiliates to vote to accept the Plan.

6.   Class 6 — Existing Equity Interests

(a)    *Classification:*  Class 6 consists of existing Equity Interests.

(b)    *Treatment:*  Holders of existing Equity Interests in the Debtor will not receive a Distribution under the Plan and all such Equity Interests shall be cancelled as of the Effective Date; *provided, however,* that, upon the Effective Date, the Post-Effective Date Officer shall be deemed to hold one limited liability company interest in the Post-Effective Date Debtor for the benefit of holders of Allowed Claims (other than holders of Allowed Class 4 General Unsecured Claims); *provided, further,* that the Post-Effective Date Officer shall not be entitled to receive any Distribution on account of such Equity Interest.

(c)    *Voting:*  Class 6 is Impaired and will neither retain nor receive any property under the Plan. Notwithstanding the foregoing and section 1126(g) of the Bankruptcy Code, subject to the terms of the Sponsor Settlement, the Sponsor (as the sole holder of the Equity Interests) has agreed to vote to accept the Plan.

C.    *Elimination of Vacant Classes*

Any Class of Claims that does not contain, as of the date of the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, a holder of an Allowed Claim, or a holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

D.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Post-Effective Date Debtor's right in respect of any Unimpaired Claim, including, without limitation,

17

all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.    *Presumed Acceptance of the Plan*

Classes 1 and 2 are Unimpaired under the Plan. Therefore, holders of Claims in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

B.    *Voting Classes*

Classes 3, 4, 5, and 6 are Impaired under the Plan. The holders of Claims in such Classes as of the Record Date are entitled to vote to accept or reject the Plan. Notwithstanding the foregoing, holders of Intercompany Claims and existing Equity Interests will neither retain nor receive any property under the Plan.

C.    *Acceptance by Impaired Class of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class has accepted the Plan if the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims in such Class actually voting have voted to accept the Plan.

D.    *Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no holders of Claims vote to accept or reject the Plan, the Plan shall be presumed to be accepted by the holders of the Claims in such Class.

E.    *Individual Creditor Voting Rights*

Notwithstanding anything to the contrary in this Plan, the voting rights of holders of Claims in any Class shall be governed in all respects by the Solicitation Procedures Order.

F.    *Confirmation of the Plan pursuant to sections 1129(a)(10) and (b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation of the Plan by acceptance of the Plan by Class 3 or Class 4. The Debtor requests confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not vote to accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor reserves the right to modify the Plan or any exhibit or part of the Plan Supplement to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

# ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, Causes of Action, and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Equity Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement of all such Claims, Equity Interests, and controversies in accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that any such compromise and settlement is in the best interests of the Debtor, its Estate, and any holders of Claims and Equity Interests and is fair, equitable, and reasonable, and in the best interests of the Debtor and its Estate.  All Distributions made to holders of Allowed Claims in any Class are intended to be and shall be final with respect to such Distributions.

B.    *Sponsor Settlement and Funding of the Plan*

As of the Effective Date, the Plan, inclusive of the Sponsor Settlement, which is incorporated herein by reference, represents a full, final, integrated, complete, and good-faith compromise, settlement, release, and resolution of, among other matters, disputes and potential litigation between the Debtor and GE, including the Potential Claims.  In consideration for the Releases, injunctions, and other consideration provided pursuant to the Plan and the Sponsor Settlement, the Sponsor shall pay the Sponsor Settlement Amount in Cash to the Debtor (subject to the conditions set forth in the Sponsor Settlement), on the Effective Date.  In addition, pursuant to the terms of the Sponsor Settlement, on the Effective Date, the Sponsor shall provide, or cause to be provided, to the Debtor the Exit Financing.  The Sponsor shall release (and cause its Affiliates to release) any and all Intercompany Claims against the Debtor, including any Intercompany Claims that would constitute Secured Claims and approximately $93 million owed by the Debtor on account of various prepetition intercompany financing agreements.  Accordingly, the treatment provided in the Plan to the holders of the TMI Claim and General Unsecured Claims have been made available only as a result of, and pursuant to, the Sponsor Settlement.

The Sponsor Settlement is a comprehensive, good-faith compromise and settlement that is the fundamental foundation of the Plan.  As such, the Plan shall be deemed a motion to approve the Sponsor Settlement and the good-faith compromise and settlement of the Potential Claims pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval of the Sponsor Settlement under Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, (ii) a finding by the Bankruptcy Court that the Sponsor Settlement is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate, and (iii) a judicial determination that the Sponsor Settlement is integral to, and not

19

severable from, the Plan; *provided, however*, that the Sponsor Settlement shall not constitute an admission of the Sponsor's actual liability.

C.      *The TMI Settlement*

As of the Effective Date, the Plan and the TMI Settlement, which is incorporated herein by reference, represent a full, final, integrated, complete, and good-faith compromise, settlement, release, and resolution of, the TMI Claim. In full and final settlement and resolution of the TMI Claim, on the TMI Effective Date, the Post-Effective Date Debtor, shall pay the TMI Settlement Amount to the TMI Trust in accordance with the payment instructions provided by TMI. In the event that the TMI Effective Date occurs after the Effective Date, the Post-Effective Date Debtor shall hold the TMI Settlement Amount in a segregated account for the benefit of the TMI Trust until it is paid to the TMI Trust accordance with the TMI Settlement or Article III.B.3 hereof. The Plan shall be deemed a motion to approve the TMI Settlement and the good-faith compromise and settlement of the TMI Claim pursuant to Bankruptcy Rule 9019, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the TMI Settlement under Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, and a finding by the Bankruptcy Court that the TMI Settlement is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate; *provided, however*, that the TMI Settlement shall not constitute an admission of the Debtor's actual liability.

Solely in the event the TMI Settlement is terminated pursuant to section 2.09 thereof, in full and complete satisfaction of the TMI Claim, the Post-Effective Date Debtor shall make payment of the TMI Distribution Amount in Cash to the TMI Trust in accordance with the payment instructions provided by TMI as soon as reasonably practicable after such termination, but not prior to the Effective Date. The payment in Cash of the TMI Distribution Amount shall constitute a "WMC Trust Payment" within the meaning of the Prepetition Settlement Agreements.

D.      *Sources for Distributions*

Distributions under the Plan to holders of the DIP Loan Claim, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, Secured Claims and the TMI Claim shall be funded from the Post-Effective Date Debtor Assets (other than the proceeds of the Exit Financing Collateral unless and until all obligations arising under the Exit Financing have been indefeasibly paid in full) and distributed by the Post-Effective Date Debtor. Prior to the Effective Date, the Debtor will draw down a sufficient amount of DIP Financing (but in any event not in an amount to exceed $15 million) to allow the Post-Effective Date Debtor to make Distributions (or reserve) for the estimated amount of unpaid Allowed Administrative Expense Claims, Professional Fee Claims (including to fund the Professional Fee Escrow Account), Priority Tax Claims, and Other Priority Claims, if any, and to fund the anticipated Post-Effective Date Debtor Expenses and any other acts necessary to wind down the Debtor and the Post-Effective Date Debtor. The Class 4 Distribution shall be funded from the Liquidating Trust Assets and distributed by the Liquidating Trustee to the Class 4 Beneficiaries. The obligations arising under the Exit Financing shall be paid by the Post-Effective Date Debtor solely from the proceeds of the Exit Financing Collateral.

E.    *The Exit Financing*

Confirmation of the Plan shall be deemed to constitute approval of the Exit Financing and the Exit Financing Documents (including all transactions contemplated thereby and all actions to be taken, undertakings to be made, and obligations to be incurred by the Debtor in connection therewith) and, subject to the occurrence of the Effective Date, authorization for the Post-Effective Date Debtor to enter into and perform its obligations under the Exit Financing Documents.

On the Effective Date, the Exit Financing Documents shall constitute legal, valid, binding, and authorized obligations of the Post-Effective Date Debtor enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Financing Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Financing Documents on the Exit Financing Collateral (a) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Financing Documents, (b) shall be deemed automatically attached and perfected on the Effective Date, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Debtor, the Post-Effective Date Debtor, and the Sponsor are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach, and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

F.    *The Liquidating Trust*

1.    Formation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating Trust Assets, (b) resolving all Class 4 Disputed Claims, (c) pursuing, to the extent it sees fit, the Retained Causes of Action, and (d) making all Distributions to the Class 4 Beneficiaries.  The Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Section 301.7701-4(d) and the sole purpose of the Liquidating Trust shall be to liquidate and distribute the Liquidating Trust Assets in accordance with United States Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a

trade or business except to the extent reasonably necessary to and consistent with its liquidating purpose.

      2.   Appointment of the Liquidating Trustee

On or prior to the Confirmation Date, the Debtor shall appoint the Liquidating Trustee. The identity of the Liquidating Trustee shall be included in the Plan Supplement. The Liquidating Trustee shall serve in accordance with the Liquidating Trust Agreement and the Plan.

      3.   Funding of the Liquidating Trust

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust; *provided, however,* that any Excess Post-Effective Date Debtor Assets shall not vest in the Liquidating Trust unless and until the Post-Effective Date Officer determines that (a) the DIP Loan Claim, (b) all Allowed Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Secured Claims, and Other Priority Claims, (c) the TMI Claim, (d) all obligations under the Exit Financing, and (e) all Post-Effective Date Debtor Expenses, have been paid in full or fully reserved for. The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief, and the Confirmation Order shall be considered an order granting such relief. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Class 4 Beneficiaries. For all federal income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall be treated as (1) a transfer of the Liquidating Trust Assets directly to the Class 4 Beneficiaries (other than to the extent such Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer of such Liquidating Trust Assets by the Class 4 Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Class 4 Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust (other than the Liquidating Trust Assets as are allocable to Disputed Claims). The Liquidating Trust Assets shall vest in the Liquidating Trustee solely in its capacity as such. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtor's right, title, and interest in the Liquidating Trust Assets and the Debtor shall have no further right or interest with respect to the Liquidating Trust Assets in the Liquidating Trust.

G.    *Rights and Powers of the Liquidating Trustee*

The Liquidating Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code with respect to the Liquidating Trust Fund, the Liquidating Trust Assets, the resolution of Disputed Class 4 – General Unsecured Claims, and the Retained Causes of Action, and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, to (l) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan as they relate to the Liquidating Trust, including the Liquidating Trust Assets, (2) liquidate the Liquidating Trust Assets, (3) prosecute, settle, abandon or compromise the Retained Causes of Action, (4) make Distributions to the Class 4 Beneficiaries, (5) establish and administer any necessary reserves for Disputed Claims for Class 4 – General Unsecured Claims that may be required, (6) subject to the

terms of the Plan, object to the Disputed Class 4 – General Unsecured Claims and prosecute, settle, compromise, withdraw or resolve such objections, and (7) employ and compensate professionals and other agents; *provided*, *however*, that any such compensation shall be made only out of the Liquidating Trust Assets, in each case to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of United States Treasury Regulation Section 301.7701-4(d) for federal income tax purposes.

H.     *The Liquidating Trust Expenses*

       The Liquidating Trust Expenses incurred on or after the Effective Date shall be paid out of the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement, without further order of the Bankruptcy Court.

I.     *Retention of Professionals by Liquidating Trustee*

       The Liquidating Trustee may retain and compensate attorneys and other professionals to assist in its duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without the need for Bankruptcy Court approval.  Without limiting the foregoing, the Liquidating Trustee may retain any professional that represented parties in interest in the Chapter 11 Case.

J.     *Periodic Reports to Be Filed by the Liquidating Trust*

       The Liquidating Trustee may file periodic reports regarding the liquidation or other administration of property comprising the Liquidating Trust, the Distributions made by it to the Class 4 Beneficiaries and other matters required to be included in such report in accordance with the Liquidating Trust Agreement.  In addition, the Liquidating Trustee will file tax returns for the Liquidating Trust treating the Liquidating Trust (other than the Liquidating Trust Assets allocable to Disputed Claims) as a grantor trust pursuant to United States Treasury Regulation Section 1.671-4(a).

K.     *Directors, Officers, Managers, Members and Authorized Persons of the Debtor*

       On the Effective Date, the authority, power and incumbency of the persons then acting as directors, officers, managers, members and other authorized persons of the Debtor shall be terminated and such persons shall be deemed to have resigned.

L.     *The Post-Effective Date Debtor*

       1.     Appointment of the Post-Effective Date Officer

       On the Effective Date, the Post-Effective Date Officer shall be appointed as the sole director, officer, manager, member and authorized Person of the Post-Effective Date Debtor pursuant to the terms of the Post-Effective Date Debtor Organizational Documents.  The identity of the Post-Effective Date Officer shall be included in the Plan Supplement.  The Post-Effective Date Officer shall serve in accordance with the Post-Effective Date Debtor Organizational Documents and the Plan.

2.  <u>Vesting of the Post-Effective Date Debtor Assets</u>

On the Effective Date, the Post-Effective Date Debtor Assets shall vest automatically in the Post-Effective Date Debtor.  The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief, and the Confirmation Order shall be considered an order granting such relief.  The transfer of the Post-Effective Date Debtor Assets to the Post-Effective Date Debtor shall be made for the purpose of liquidating and collecting the proceeds of the Post-Effective Date Debtor Assets for the payment and satisfaction of the Post-Effective Date Debtor Expenses, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Secured Claims, Other Priority Claims, the TMI Claim, the Exit Financing, and the DIP Claim, all as more fully set forth in the Plan.

3.  <u>Rights and Powers of the Post-Effective Date Debtor</u>

The Post-Effective Date Debtor shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code with respect to the Post-Effective Date Debtor Assets and the resolution of Disputed Claims (other than Class 4 – General Unsecured Claims) and shall have all the rights and powers set forth in the Post-Effective Date Debtor Organizational Documents and the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, and the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan, (2) liquidate the Post-Effective Date Debtor Assets, (3) collect or liquidate the Exit Financing Collateral and indefeasibly pay all obligations of the Exit Financing from the proceeds thereof, (4) establish and administer any necessary reserves for Disputed Claims that may be required (other than with respect to reserves for Disputed Class 4 – General Unsecured Claims), (5) object to the Disputed Claims (other than Disputed Class 4 – General Unsecured Claims) and prosecute, settle, compromise, withdraw or resolve such objections, (6) employ and compensate professionals and other agents from the Post-Effective Date Debtor Assets, (7) transfer any Excess Post-Effective Date Debtor Assets to the Liquidating Trust, and (8) any other acts necessary to wind down the Debtor and the Post-Effective Date Debtor.

4.  <u>The Post-Effective Date Debtor Expenses</u>

The Post-Effective Date Debtor Expenses shall be funded from the proceeds of the Post-Effective Date Debtor Assets.

5.  <u>Dissolution of the Post-Effective Date Debtor</u>

Following (a) the liquidation and collection of the Post-Effective Date Debtor Assets, (b) the payment and satisfaction of the Exit Financing or the assignment of the Exit Financing Collateral to the Exit Lender, (c) the payment and satisfaction of the Post-Effective Date Debtor Expenses, (d) the Distributions authorized under the Plan to holders of Allowed Claims (other than Class 4 – General Unsecured Claims), (e) the transfer of any Excess Post-Effective Date Debtor Assets to the Liquidating Trust, and (f) the completion of all other actions necessary and appropriate under applicable law to wind-up the affairs of the Post-Effective Date Debtor, the Post-Effective Date Officer, on behalf of the Post-Effective Date Debtor, is authorized to and shall (x) complete and file the Post-Effective Date Debtor's final federal, state and local tax

returns and (y) file the Post-Effective Date Debtor's certificate of dissolution, cancellation, termination or such similar document, together with all other necessary documents, to effect the Post-Effective Date Debtor's dissolution and/or termination of its existence under the applicable laws of Delaware.  The filing of the Debtor's certificate of dissolution, cancellation, termination or such similar document shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders, members or the board of directors of the Post-Effective Date Debtor.

M.      *Books and Records of the Debtor*

On the Effective Date, the Debtor shall be deemed to, and shall take all necessary steps to, assign, transfer and distribute to (1) the Post-Effective Date Debtor, the Post-Effective Date Debtor Assets, including all of the Debtor's books and records, other than any books and records relating solely and directly to the Liquidating Trust Assets and Class 4 – General Unsecured Claims, and (2) the Liquidating Trust, the Liquidating Trust Assets, including all of the Debtor's books and records relating solely and directly to the Liquidating Trust Assets and Class 4 – General Unsecured Claims.

N.      *Preservation of Privileges of the Estate and Debtor*

The Post-Effective Date Debtor shall be the successor to all of the privileges of the Estate and the Debtor, including, but not limited to, the attorney/client privilege and any common interest privilege; *provided, however*, that the Liquidating Trustee shall be the successor to all of the privileges of the Estate and the Debtor relating to the Retained Causes of Action and Disputed Class 4 – General Unsecured Claims.

O.      *Operations of the Debtor Between the Confirmation Date and the Effective Date*

The Debtor shall continue to operate as a Debtor in Possession during the period from the Confirmation Date through and until the Effective Date.

P.      *Term of Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

Q.      *Cancellation of Equity Interests*

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates and other documents evidencing the Equity Interests shall be deemed automatically cancelled and shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtor thereunder or in any way related thereto, including any obligation of the Debtor to pay any franchise or similar type taxes on account of such Equity Interests, shall be discharged.

RLF1 21314091v.18

# ARTICLE VI.

# PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Initial Distribution Date*

On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall make, or shall make adequate reserves for, the Distributions required to be made by it to holders of Class 4 – General Unsecured Claims under the Plan.  For the avoidance of doubt, the Post-Effective Date Debtor shall make Distributions to the Holders of Allowed Claims (other than Class 4 – General Unsecured Claims) at the times and in the manner specified in Article VI hereof.

B.    *Disputed Claims Reserve*

1.    Establishment of Disputed Claims Reserves

On the Effective Date or as soon thereafter as practicable, the Liquidating Trustee, as Disbursing Agent for Class 4 – General Unsecured Claims, shall establish the Disputed Claims Reserve for Class 4 – General Unsecured Claims, and the Post-Effective Date Debtor, as Disbursing Agent for Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, and   Secured Claims, may establish a Disputed Claims Reserve for all Disputed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, and Secured Claims.  To the extent a Disputed Claims Reserve is established, the applicable Disbursing Agent shall reserve in Cash or other property, for Distribution on account of each Disputed Claim, the amount of the Distribution that such Disputed Claim would be entitled to receive under the Plan if it were to become an Allowed Claim (or such lesser amount as may be determined by the applicable Disbursing Agent and the holder of such Disputed Claim or by the Bankruptcy Court in accordance with Article VII hereof).

2.    Maintenance of Disputed Claims Reserves

The Disbursing Agents shall hold the property in their respective Disputed Claims Reserves in trust for the benefit of the holders of such Disputed Claims ultimately determined to be Allowed.  The Disputed Claims Reserves shall be terminated by the Disbursing Agents when all Distributions and other dispositions of Cash or other property required to be made hereunder to each respective class of Claims have been made in accordance with the terms of the Plan. Upon termination of a Disputed Claims Reserve, all Cash or other property held in the Disputed Claims Reserve shall revest in and become the property of the Post-Effective Date Debtor or the Liquidating Trust, as applicable, to be Distributed or otherwise treated in accordance with the terms of the Plan.

3.    Federal Income Tax Treatment of the Disputed Claims Reserve for Class 4

Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Liquidating Trustee may either (1) timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by United States Treasury Regulation section 1.468B-9 or (2) treat such Liquidating Trust Assets as a "complex trust."  All parties (including, without limitation, the Liquidating Trustee and the

26

Class 4 Beneficiaries) shall report consistently with the foregoing for federal, state, and local income tax purposes.

C.    *Subsequent Distributions*

1.    Any Distribution that is held in a Disputed Claims Reserve pursuant to Article VI.B shall be paid on the first Subsequent Distribution Date after such Claim is Allowed (with respect to Class 4 – General Unsecured Claims) or in accordance with the Plan (with respect to Administrative Expense Claims, Priority Tax Claims, Secured Claims or Other Priority Claims). Except as set forth in the Plan, no interest shall accrue or be paid on the unpaid amount of any Distribution paid in accordance with this Article VI.C.

2.    The Liquidating Trustee shall, in its discretion, make additional Distributions to holders of Class 4 – General Unsecured Claims from time to time as a result of additional amounts becoming available due to disallowance of Disputed Claims and/or additional assets becoming part of the Liquidating Trust Fund; *provided, however*, in connection with any Distribution made on a Subsequent Distribution Date, the Liquidating Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Liquidating Trust Assets or to meet Liquidating Trust Expenses.

D.    *Record Date for Distributions*

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date, which shall be the Confirmation Date, will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Post-Effective Date Debtor or the Liquidating Trust, as applicable, shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  In making any Distribution with respect to any Claim, the Post-Effective Date Debtor or the Liquidating Trust, as applicable, shall be entitled to recognize and deal with, for all purposes hereunder, only those holders of record as of the close of business on the Record Date.

E.    *Delivery of Distributions*

1.    General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Disbursing Agent to (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on a proof of claim Filed by such holder or (b) the last known address of such holder if no proof of claim is Filed or if the Debtor has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, then the Disbursing Agent may, in its discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the Distribution was undeliverable, but no Distribution to any such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time, or as soon as practicable thereafter, the Distribution to such holder shall be made to the holder without interest.  Amounts in respect of any undeliverable Distributions made by the Post-Effective Date Debtor or the Liquidating Trust, as applicable, shall be returned to, and held in

27

trust by, the Post-Effective Date Debtor or the Liquidating Trust, as applicable, until the Distributions are claimed or are deemed to be unclaimed property as set forth in Article VI.E.3 hereof. The Post-Effective Date Debtor or the Liquidating Trust, as applicable, shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided*, *however*, that the Liquidating Trust's or the Post-Effective Date Debtor's discretion may not be exercised in a manner inconsistent with any express requirements of the Plan, the Liquidating Trust Agreement, and/or the Post-Effective Date Debtor Organizational Documents, as applicable.

2.  Minimum Distributions

Notwithstanding anything herein to the contrary, if a Distribution to be made to a holder of an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be $125 or less, no such Distribution will be made to that holder unless a request therefor is made in writing to the Post-Effective Date Debtor or the Liquidating Trustee, as applicable; *provided, however,* that if any Distribution is not made pursuant to this Article VI, it shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Class 4 General Unsecured Claim. If the amount of any final Distribution to any holder of an Allowed Class 4 General Unsecured Claim would be $50 or less, then such Distribution shall be made available for distribution to all holders of Allowed Class 4 General Unsecured Claims receiving final Distributions of at least $50.

3.  Unclaimed Property

Except with respect to property not distributed because it is being held in a Disputed Claims Reserve, Distributions that are not claimed by the expiration of six (6) months from the date of the relevant Distribution shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in the Post-Effective Date Debtor or the Liquidating Trust, as applicable, and the Claims with respect to which those Distributions are made shall be automatically cancelled, and any entitlement of any Person to those Distributions shall be extinguished and forever barred. Nothing contained in the Plan shall require the Post-Effective Date Debtor or the Liquidating Trust to attempt to locate any holder of an Allowed Claim. All funds or other property that vest or revest in the Post-Effective Date Debtor or the Liquidating Trust, as applicable, pursuant to this paragraph shall be used to pay the Post-Effective Date Debtor Expenses or the Liquidating Trust Expenses, as applicable. To the extent any such funds or property that vest or revest in the Post-Effective Date Debtor are remaining after payment or reserve in full of (x) all Post-Effective Date Debtor Expenses, the DIP Claim and the Exit Financing, and (y) all Allowed Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Secured Claims and Other Priority Claims, such amounts shall be paid to the Liquidating Trust and constitute Excess Post-Effective Date Debtor Assets. To the extent any such funds or property that vest or revest in the Liquidating Trust are remaining after payment or reserve in full of all Liquidating Trust Expenses, such amounts shall be distributed on a Pro Rata basis to holders of Allowed Class 4 – General Unsecured Claims. In the event the Liquidating Trustee holds Liquidating Trust Assets after all Liquidating Trust Expenses and Distributions have been made, any remaining Liquidating Trust Assets shall be liquidated to Cash and distributed to a charitable organization chosen by the Liquidating Trustee, assuming such distribution is economically feasible. No unclaimed property, Post-Effective Date Debtor

28

Assets, or Liquidating Trust Assets shall escheat to any federal, state or local government or other Person.

F.    *Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement*

Cash payments made pursuant to the Plan or the Liquidating Trust Agreement shall be made by checks drawn on a domestic bank selected by the Post-Effective Date Debtor or the Liquidating Trust, as applicable, or, at the option of the Post-Effective Date Debtor or the Liquidating Trust, as applicable, by wire transfer from a domestic bank.

G.    *Time Bar to Cash Payments by Check*

Checks issued by the Post-Effective Date Debtor or the Liquidating Trust on account of Allowed Claims shall be null and void if not negotiated within ninety days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article VI.G shall be made directly to the Post-Effective Date Debtor or the Liquidating Trust, as applicable, by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety days after the date of issuance thereof.  After that date, all Claims in respect of void checks shall be forever barred and the proceeds of those checks shall revest in and become the property of the Post-Effective Date Debtor or the Liquidating Trust, as applicable, as unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Article VI.E.3 hereof.

H.    *Limitations on Funding of Disputed Claims Reserves*

Except as expressly set forth in the Plan, none of the Debtor, the Post-Effective Date Debtor, or the Liquidating Trustee shall have any duty to fund a Disputed Claims Reserve.

I.    *Compliance with Tax Requirements*

In connection with making Distributions under this Plan, to the extent applicable, the Post-Effective Date Debtor or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Post-Effective Date Debtor or the Liquidating Trustee, as applicable, may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any Governmental Unit.  Any property so withheld will then be paid by the Post-Effective Date Debtor or the Liquidating Trustee, as applicable, to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.E.1.

29

J.      *No Payments of Fractional Dollars*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

K.      *Post-Petition Interest on Claims*

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Commencement Date on any Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

L.      *No Distribution in Excess of Allowed Amount of Claim*

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

M.      *Setoff and Recoupment*

The Post-Effective Date Debtor or the Liquidating Trust, as applicable, may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtor, the Estate, the Post-Effective Date Debtor, or the Liquidating Trust may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate, the Post-Effective Date Debtor, or the Liquidating Trust of any right of setoff or recoupment that any of them may have against the holder of any Claim.

## ARTICLE VII.

## DISPUTED CLAIMS

A.      *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, the Post-Effective Date Debtor or the Liquidating Trustee, as applicable, shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.

B.      *Resolution of Disputed Claims*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, as between the Liquidating Trustee and the Post-Effective Date Debtor, the Liquidating Trustee shall have the exclusive right to make, File, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Class 4 – General Unsecured Claims and the Post-Effective Date Debtor shall have the exclusive right to make, File, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections

30

to all other Claims.  The costs of pursuing the objections to Claims shall be borne by the Post-Effective Date Debtor or the Liquidating Trust, as applicable.  From and after the Effective Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent the Post-Effective Date Debtor or the Liquidating Trustee elects to withdraw any such objection, or reaches an agreement with the claimant to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.  For the avoidance of doubt, the Liquidating Trustee and Post-Effective Date Debtor, as applicable, may compromise, settle or otherwise resolve any Disputed Claim without Filing an objection to such Disputed Claim and without supervision or approval of the Bankruptcy Court.

C.      *Estimation of Claims*

At any time, (1) prior to the Effective Date, the Debtor, and (2) subsequent to the Effective Date, the Post-Effective Date Debtor or the Liquidating Trustee, as applicable, may request that the Bankruptcy Court estimate any Claim to the extent permitted by section 502(c) of the Bankruptcy Code.

D.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, provided that such Cause of Action is a Retained Cause of Action, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Person have been turned over or paid to the Debtor, the Post-Effective Date Debtor or the Liquidating Trust, as applicable.

E.      *Adjustment to Claims Without Objection*

Any Claim or Equity Interest that has been paid or satisfied, or any Claim or Equity Interest that has been amended or superseded, may be marked as satisfied, adjusted or expunged on the Claims Register by the Noticing Agent at the direction of the Debtor, the Post-Effective Date Debtor, or the Liquidating Trustee, as applicable, without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

F.      *Amendments to Claims or Equity Interests*

After the Confirmation Date, a Claim or Equity Interest may not be amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim or Equity Interest solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority of such Claim or Equity Interest.

**EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL HOLDERS OF PROOFS OF CLAIM FILED AFTER THE GENERAL BAR DATE OR GOVERNMENTAL BAR DATE, AS APPLICABLE, SHALL NOT BE TREATED AS**

31

CREDITORS FOR PURPOSES OF VOTING AND DISTRIBUTION PURSUANT TO BANKRUPTCY RULE 3003(c)(2) AND PURSUANT TO THE GENERAL BAR DATE ORDER.

## ARTICLE VIII.

### TREATMENT OF EXECUTORY CONTRACTS

A.    *Rejection of Executory Contracts*

1.    Subject to Article VIII.C hereof, on the Effective Date, except to the extent that the Debtor either previously has assumed, assumed and assigned or rejected an Executory Contract by an order of the Bankruptcy Court or has filed a motion to assume or assume and assign an Executory Contract prior to the Effective Date, each Executory Contract entered into by the Debtor prior to the Commencement Date that has not previously expired or terminated pursuant to its own terms will be rejected pursuant to section 365 of the Bankruptcy Code. Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an Executory Contract. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a finding that the rejection thereof is in the best interest of the Debtor, its Estate and all parties in interest in the Chapter 11 Case.

2.    Notwithstanding anything contained in the Plan to the contrary, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the rights of the Debtor, the Post-Effective Date Debtor, or the Liquidating Trustee, as applicable, to move to assume or reject such contract or lease shall be extended until the date that is thirty days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired. The deemed rejection provided for in Article VIII.A.1 hereof shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Debtor following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

B.    *Rejection Damages Claims*

In the event that the rejection of an Executory Contract pursuant to Article VII.A hereof results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not previously evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor, its Estate, the Post-Effective Date Debtor, the Liquidating Trustee, or the Liquidating Trust or their respective successors and assigns, assets and properties, unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtor, the Post-Effective Date Debtor, the Liquidating Trustee, or the Liquidating Trust, as applicable, no later than thirty days after service of notice of the Effective Date. All such Claims shall be subject to the permanent injunction set forth in Article X.D hereof. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Class 4 General Unsecured Claims under the Plan and shall be subject to the provisions of Article III hereof.

32

C.    *Debtor's Insurance Policies*

Nothing in the Plan, the Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtor (and its Estate) and the Debtor's insurers (and third-party claims administrators) under the Debtor's insurance policies or modifies the coverage or benefits provided thereunder or the terms or conditions thereof or diminishes or impairs the enforceability of the Debtor's insurance policies.

D.    *Prepetition Settlement Agreements*

Notwithstanding the foregoing, nothing in this Plan abrogates the obligations of the non-debtor parties to the Prepetition Settlement Agreements to make payment of any amounts due to the Debtor under the Prepetition Settlement Agreements.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.    *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.    The Confirmation Order has become a Final Order.

2.    The Confirmation Order shall be in full force and effect.

3.    GEC shall have confirmed, in writing, that it is prepared to fund the Sponsor Settlement Amount immediately upon the occurrence of the Effective Date.

4.    The Sponsor shall have confirmed, in writing, that it is prepared to provide the Exit Financing immediately upon the occurrence of the Effective Date.

Notwithstanding the foregoing, the conditions precedent to the Effective Date set forth in this Article IX.A, other than paragraph 2 hereof, may be waived, in whole or in part, by the Debtor with the consent of GEC and the Sponsor.  Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

B.    *Establishing the Effective Date*

The calendar date to serve as the Effective Date shall be a Business Day on or promptly following the satisfaction or waiver of all conditions to the Effective Date, on which no stay of the Confirmation Order is in effect, which date will be selected by the Debtor. On or within two Business Days of the Effective Date, the Debtor shall file and serve a notice of occurrence of the Effective Date. Such notice shall include, among other things, the Administrative Bar Date, the Professional Fee Claims Bar Date and the deadline to file proofs of Claim relating to damages from the rejection of any Executory Contract pursuant to the terms of the Plan.

33

## ARTICLE X.

## RELEASES, INJUNCTIVE AND RELATED PROVISIONS

A.      _Releases by the Debtor; Covenant Not to Sue_

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTOR FOREVER RELEASES, WAIVES AND DISCHARGES THE RELEASED PARTIES OF AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, OBLIGATIONS, INTERESTS, SUITS, DEMANDS, DAMAGES, RIGHTS, LOSSES, REMEDIES, AND LIABILITIES WHATSOEVER WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR FIXED, EXISTING OR HEREINAFTER ARISING, IN LAW, AT EQUITY, TORT, CONTRACT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR OR ITS ESTATE, THAT SUCH PERSON WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE DEBTOR, ITS OPERATIONS, ITS PROPERTY, OR THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, (II) THE POTENTIAL CLAIMS, (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, (IV) THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (V) ANY INTERCOMPANY TRANSACTIONS, (VI) THE DEBTOR'S FILING OF THE CHAPTER 11 CASE, (VII) THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF (A) THE CHAPTER 11 CASE, (B) THE DISCLOSURE STATEMENT, (C) THE DIP CREDIT AGREEMENT, (D) THE TMI SETTLEMENT, (E) THE SPONSOR SETTLEMENT, (F) THE PLAN, (G) THE EXIT FINANCING, (H) THE PLAN SUPPLEMENT, OR (I) ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT, INSTRUMENT, OR OTHER DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE DIP CREDIT AGREEMENT, THE TMI SETTLEMENT, THE SPONSOR SETTLEMENT, OR THE PLAN, THE FILING OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (VIII) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ON THE EFFECTIVE DATE AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, THE DEBTOR, ON BEHALF OF ITSELF AND ITS ESTATE, THE POST-EFFECTIVE DATE DEBTOR, THE LIQUIDATING TRUSTEE, AND THE LIQUIDATING TRUST SHALL COVENANT AND AGREE NOT TO SUE AND SHALL

34

**FORBEAR FROM INSTITUTING OR PROSECUTING ANY CAUSE OF ACTION OR PROCEEDING OF ANY KIND, NATURE, OR CHARACTER, AT LAW OR IN EQUITY, AGAINST ANY OF THE RELEASED PARTIES ON ACCOUNT OF, IN CONNECTION WITH, OR IN ANY WAY RELATED TO THE POTENTIAL CLAIMS, EXCEPT THAT THE DEBTOR SHALL BE ENTITLED TO TAKE ALL APPROPRIATE STEPS, INCLUDING INSTITUTING PROCEEDINGS, TO ENFORCE THE PLAN AND THE SPONSOR SETTLEMENT.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES AND COVENANT NOT TO SUE SET FORTH IN THIS ARTICLE X.A PURSUANT TO BANKRUPTCY RULE 9019 AND ITS FINDING THAT THEY ARE: (A) IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, REPRESENTING A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND CAUSES OF ACTION THEREBY RELEASED; (B) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS; (C) FAIR, EQUITABLE AND REASONABLE; (D) APPROVED AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (E) A BAR TO ALL OF THE DEBTOR, THE POST-EFFECTIVE DATE DEBTOR, THE LIQUIDATING TRUSTEE, AND THE LIQUIDATING TRUST FROM ASSERTING ANY CLAIM OR CAUSE OF ACTION, INCLUDING THE POTENTIAL CLAIMS, RELEASED PURSUANT TO THE RELEASES OR AGREED NOT TO PURSUE PURSUANT TO THE COVENANT NOT TO SUE SET FORTH IN THIS ARTICLE X.A.**

B.    *__Exculpation__*

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN PRIOR TO THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE SPONSOR SETTLEMENT, THE TMI SETTLEMENT, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR TREATMENT OF EXECUTORY CONTRACTS, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.  THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

35

C.    ***Third-Party Releases***

AS OF THE EFFECTIVE DATE EACH OF THE RELEASING PARTIES SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (OTHER THAN THE RIGHTS OF THE DEBTOR TO ENFORCE THE PLAN, AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENT OR DOCUMENTS DELIVERED HEREUNDER), WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR FIXED, EXISTING OR HEREINAFTER ARISING, IN LAW, AT EQUITY, TORT, CONTRACT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR OR ITS ESTATE, THAT SUCH PERSON WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE DEBTOR, ITS OPERATIONS, ITS PROPERTY, OR THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, (II) THE POTENTIAL CLAIMS, (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, (IV) THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (V) ANY INTERCOMPANY TRANSACTIONS, (VI) THE DEBTOR'S FILING OF THE CHAPTER 11 CASE, (VII) THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF (A) THE CHAPTER 11 CASE, (B) THE DISCLOSURE STATEMENT, (C) THE DIP CREDIT AGREEMENT, (D) THE TMI SETTLEMENT, (E) THE SPONSOR SETTLEMENT, (F) THE PLAN, (G) THE EXIT FINANCING, (H) THE PLAN SUPPLEMENT, OR (I) ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT, INSTRUMENT, OR OTHER DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE DIP CREDIT AGREEMENT, THE TMI SETTLEMENT, THE SPONSOR SETTLEMENT, OR THE PLAN, THE FILING OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (VIII) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR PERSON UNDER THE PLAN, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) ASSUMED OR EXECUTED IN CONNECTION WITH THE PLAN.

D.    *__Injunction__*

1.    **In accordance with section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtor;** *provided*, *however*, **upon confirmation of the Plan and the occurrence of the Effective Date, the holders of Claims or Equity Interests may not seek payment or recourse against or otherwise be entitled to any distribution from the Debtor, the Estate, the Liquidating Trust, the Post-Effective Date Debtor and any of their assets and properties except as expressly provided in this Plan and the Liquidating Trust Agreement.**

2.    **Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest, from:**

(a) **commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Estate, the Liquidating Trust, the Post-Effective Date Debtor, their successors and assigns, and any of their assets and properties;**

(b) **enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Estate, the Liquidating Trust, the Post-Effective Date Debtor, their successors and assigns, and any of their assets and properties;**

(c) **creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Estate, the Liquidating Trust, the Post-Effective Date Debtor, their successors and assigns, and any of their assets and properties;**

(d) **asserting any right of setoff or subrogation of any kind against any obligation due to the Debtor, the Estate, the Liquidating Trust, the Post-Effective Date Debtor, or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted in a timely-filed proof of Claim; or**

(e) **commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.**

3.    **From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Released Parties, their respective successors and assigns, and any of their assets and properties, any suit, action or other proceeding, on account of or respecting any Claim, Potential Claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.**

E.    *Releases of Liens*

Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, to the extent such exist, all mortgages, deeds of trust, liens, pledges or other security interests (other than any liens or other security interests granted to the Exit Lender pursuant to

37

the Exit Financing Documents) against property of the Estate shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtor or the Liquidating Trustee, as applicable.

F.      *Preservation of Rights of Action*

1.  Vesting of Causes of Action

(a) Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtor may hold against any Person shall vest upon the Effective Date in the Liquidating Trust.

(b) Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Retained Causes of Action, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

(c) Retained Causes of Action and any recoveries therefrom shall remain the sole property of the Liquidating Trust (for the sole benefit of the holders of Allowed Class 4 – General Unsecured Claims).

2.  Preservation of All Retained Causes of Action Not Expressly Settled or Released

(a) Unless a Retained Cause of Action against a holder or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtor and the Liquidating Trustee expressly reserve such Retained Cause of Action for later adjudication by the Liquidating Trustee (including, without limitation, Retained Causes of Action not specifically identified or described in the Plan Supplement or elsewhere or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Retained Causes of Action have been released in the Plan (including, without limitation, and for the avoidance of doubt, the Releases contained in Articles X.A and X.C hereof) or any other Final Order (including the Confirmation Order).  In addition, the Liquidating Trustee expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

38

(b) Subject to the immediately preceding paragraph, any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased property from the Debtor, should assume that any such obligation, transfer or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Person has filed a proof of Claim against the Debtor in the Chapter 11 Case; (ii) the Debtor or Liquidating Trustee has objected to any such Person's proof of Claim; (iii) any such Person's Claim was included in the Schedules; (iv) the Debtor or Liquidating Trustee has objected to any such Person's scheduled Claim; or (v) any such Person's scheduled Claim has been identified by the Debtor or Liquidating Trustee as disputed, contingent or unliquidated.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Persons with respect to all matters related to the Chapter 11 Case, the Debtor, the Estate, the Liquidating Trust, the Post-Effective Date Debtor and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XII.B hereof;

4. ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5. resolve any disputes concerning the Disputed Claims Reserve;

6. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date; *provided*, *however*, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

7.   enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, the Sponsor Settlement, or the TMI Settlement and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection therewith;

8.   resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan, the Sponsor Settlement, and/or the TMI Settlement or any Person's obligations incurred in connection therewith;

9.   issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the Effective Date or enforcement of the Plan, the Sponsor Settlement, or the TMI Settlement, except as otherwise provided therein;

10. enforce Article IX.A, Article X.A, Article X.B, and Article X.C hereof;

11. enforce the injunction set forth in Article X.D hereof;

12. resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in the Plan, the Sponsor Settlement, or the TMI Settlement, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13. enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14. resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Sponsor Settlement, the TMI Settlement or any contract, instrument, release, indenture or other agreement or document adopted in connection therewith;

15. recover all assets of the Debtor and property of the Estate, including all claims and Causes of Action of the Debtor and the Liquidating Trust;

16. enforce all orders previously entered by the Bankruptcy Court;

17. determine such other matters as may be provided in the Confirmation Order;

18. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; and

19. enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Case.

# ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.    *Payment of Statutory Fees*

All fees due and payable pursuant to 28 U.S.C. § 1930 prior to the Effective Date shall be paid by the Debtor on the Effective Date.  After the Effective Date, the Post-Effective Date Debtor shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  The Debtor or the Post-Effective Date Debtor, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the Chapter 11 Case is closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

B.    *Modification of Plan*

Subject to the limitations contained in the Sponsor Settlement, the TMI Settlement, and the Plan: (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor may amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.    *Revocation of Plan*

Subject to the limitations contained in the Sponsor Settlement, the Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, rejection of Executory Contracts effected by the Plan, allowance of Claims provided in the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, the Debtor or any other Person; (b) prejudice in any manner the rights of the Debtor or any other Person; or (c) constitute an admission of any sort by the Debtor or any other Person.

D.    *Successors and Assigns*

The rights, benefits and obligations of any Person named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

E.    *Governing Law*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be

41

governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

F.      *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any Person with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

G.      *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

H.      *Section 1125(e) Good Faith Compliance*

The Debtor and each of its Related Parties shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

I.      *Further Assurances*

The Debtor, the Post-Effective Date Debtor, the Liquidating Trustee, all holders of Claims receiving Distributions hereunder, the holders of Equity Interests in the Debtor and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

J.      *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by first class U.S. mail, postage prepaid as follows:

> WMC Mortgage, LLC
> 6320 Canoga Avenue
> Suite 1420
> Woodland, California  91367
> Attn:  Mark V. Asdourian

*with a copy to:*

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Attn.:  Mark D. Collins, Esq. and Russell C. Silberglied, Esq.

K.    *Filing of Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

L.    *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

M.    *Binding Effect*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of this Plan shall bind every holder of a Claim against or Equity Interest in the Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Equity Interest of such holder is impaired under this Plan and whether such holder has accepted the Plan.

N.    *Aid and Recognition*

The Debtor, the Post-Effective Date Debtor, or the Liquidating Trustee, as the case may be, shall, as needed to effect the terms hereof, request the aid and recognition of any court or judicial, regulatory or administrative body in any other nation or state.

43

Dated: August __, 2019
      Wilmington, Delaware

WMC MORTGAGE, LLC

By:    /s/ *DRAFT*          
        Name:  Mark V. Asdourian
        Title:  Chief Executive Officer,
        President, and General Counsel

44