

connie: hill, living woman
On the county at Large, sacramento
c/o: 1500 W. El Camino Ave.  533
City of Sacramento, California
Zip exempt: Near [95833]
appearing in Propria Persona

FILED
2019 SEP 18 AM 9:01
CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: Connie: | ) Chapter [11] |
| Family of Hill | ) Case No.: 19-CV-10879 CSS |
| Plaintiff/Creditor. | ) |
| vs. | ) Adversary Proceeding |
| | ) No. _____ |
| WMC MORTGAGE, LLC., | ) |
| Defendants/Debtor | ) ADVERSARIAL COMPLAINT |
| | ) |

### STATEMENT OF CASE

To: The Honorable Chief Judge Christopher S. Sontchi

1.  ADVERSARIAL COMPLAINT UNDER BANKRUPTCY RULE 7001 TO AVOID AND
RECOVER PREFERENTIAL TRANSFERS UNDER 11 USC § 547(a)(b).

Plaintiff Connie:, Family of Hill, is here before the court, not waiving any rights, remedies or
defenses statutorial or procedural, brings the instant Complaint to Avoid and Recover
Preferential Transfers made by (the "Debtor") to defendant WMC MORTGAGE, LLC., ET AL
(the "Defendant") prior to the filing of the Debtors' respective petitions for relief under Chapter
11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq (the "Bankruptcy Code"),
liquidation in relation to the following subject matter for settlement and closure.

As the Creditor, I can initiate an adversary proceeding by filing this complaint to determine the
validity or priority of a lien, revoke an order confirming a plan, determine the dischargeability of
a debt, obtain an injunction, or subordinate a claim of another creditor.

## Jurisdiction and Venue

2.  This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and Section 547(b) of the Bankruptcy Code, to recover avoidable transfers made by the Debtor to the Defendant.

3.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

4.    This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

5.    This District is the proper venue for this proceeding pursuant to 28 U.S.C. § 1409.

## Parties

6.    Defendant, the U.S. Trustee is the Plan Administrator appointed by this Court pursuant to the confirmed Chapter 11 Liquidating Plan of Debtor Subsidiaries filing dated on or about April 24, 2019.

7.    Upon information and belief, Defendant, WMC MORTGAGE, LLC has its principal place of business in of California as a State of Delaware Corporation at 6320 Canoga Avenue, Suite 1300 Woodland Hills, CA 91367

## Background

8.    Among other things, the U.S. Trustee was vested with the estates' rights to avoid and recover preferential transfer made by the Debtor pursuant to Bankruptcy Code §547(b).

## Payments by the Creditor

9.      The Plaintiff/Creditor made one or more payments to the Defendant in the amount of $[400,500.00] in the manner and amount. And, in accord with the premises of Horace v. LaSalle Bank N.A., Case No. 08-362 (Alabama 2011), Connie Hill, plaintiff/claimant, is the unnamed third-party beneficiary to the pooling and servicing agreement. "Indeed without such Pooling and Servicing Agreements, [Hill] and other mortgagors similarly situated would never have been able to obtain financing."

## CLAIMS FOR RELIEF

10.     The following causes of action are asserted against the Defendant herein without prejudice to any rights the Plaintiff/Creditor may have, or which this Court may grant to the Plaintiff/ Creditor, to assert additional causes of action or allegations based on facts disclosed in documents or other information made available to the Plaintiff/ Creditor in the future or developed as a result of discovery or otherwise.

11. The SUPERIOR COURT OF CALIFORNIA is not a Constitutional Court established under the CALIFORNIA constitution in whom power is vested by The judicial power of the state but is a privately owned Commercial Investment Business Entity known as the SUPERIOR COURT OF CALIFORNIA, DUNS #, STANDARD INDUSTRIAL CLASSIFICATION OR SIC CODE #, AND NORTH AMERICAN INDUSTRIAL CLASSIFICATION NUMBER # FOR SUPERIOR COURT OF CALIFORNIA, Said alleged "court" is engaged in Trafficking in Human Capital and Money Laundering under 18 USC §§ 1581-1597, 1951, 1956, 1957, 1959 & 1960, the United Nations Convention against Transnational Organized Crime and the Protocols thereto Adopted by the UN General Assembly: 15 November 2000, by resolution 55/25 Entry into force: 29 September 2003, in accordance with article 38 Signatories: 147 Parties: 189 (as of 26 July 2018) and who deposited the judgment order entered on July 2007, into the JUDGES RETIREMENT FUND under THE CRIS (COURT REGISTRY INVESTMENT SYSTEM), INVESTING AND WITHDRAWING FUNDS. Money paid into court under this rule must be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute. The money must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing

instrument and pursuant to 28 U.S.C. § 1914 Order Regarding Deposit of Funds with the Court;
Excerpt:

> "Accordingly, IT IS ORDERED, that the Clerk of Court shall deduct from income earned on
> registry funds invested in interest-bearing accounts or instruments, a fee not exceeding that
> authorized by the Judicial Conference of the United States and set by the Director of the
> Administrative Office in accordance with the schedule which shall be published periodically
> by the Director in the Federal Register. The fee shall be withdrawn whenever income earned
> becomes available for deduction and shall be deposited in the United States Treasury without
> further order of the court. This assessment shall apply to all registry funds invested in interest-
> bearing accounts held outside the United States Treasury."

Money sent to the Court for deposit into the Court's Registry Fund requires a court order. Pursuant
to Local Rule 67.1, if parties want funds on deposit with the Court to be placed in some form of
interest-bearing instrument, CRIS (Court Registry Investment System) is the only allowable
investment mechanism. Executive Order 13818 of December 20, 2017 Blocked the Property of
Defendants who were Involved in Serious Human Rights Abuse or Corruption by selling and
marketing Human Capital through the Birth Certificate which is a Federal Bank Note, which was
passed by Donald Trump as President by executive order 13818, supra, the Constitution and the
laws of the United States of America, including the International Emergency Economic Powers
Act (50 U.S.C. 1701 et seq.) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 et seq.)
(NEA), the Global Magnitsky Human Rights Accountability Act (Public Law 114-328) (the
"Act"), section 212(f) of the Immigration and Nationality Act of 1952 (8 U.S.C. 1182(f)) (INA),
and section 301 of title 3, United States Code.


12.    Before the SUPERIOR COURT OF CALIFORNIA can proceed juridically, jurisdiction
must be complete – consisting of two opposing parties (not their alleged Attorney David R. Endres,
Esq., in the said State "court," DAVID R. ENDRES CA-SBA123564, can enter an appearance
on behalf of a party, however only the parties can testify, and until the Plaintiff in said court, WMC
MORTGAGE LLC ET AL testifies, SUPERIOR COURT OF CALIFORINA has no basis upon
which to rule juridically). The two halves of subject matter jurisdiction equate to the statutory or
common law authority that the action is brought under (the theory of indemnity) and the sworn
testimony of a competent fact witness concerning the injury suffered (= the cause of action). If a
jurisdictional failing appears on the face of the record, the matter is void, subject to vacation with

damages, and can never be time-barred. So, a question that naturally occurs is: 'If I successfully vacate a void judgment, can they just come back and try the case again?' The answer is No!

13.     Defendants WMC MORTGAGE, LLC ET AL, AS THE DRAWEES/PAYEES AND ACCEPTORS have Waived Right to Payment by the Impairment of the Collateral and Recourse by Special Restrictive Indorsements as those terms are defined UCC Code using similar Ohio Commercial Code definitions] Definitions. (1)  In this chapter, unless the context otherwise requires, the following definitions apply: (1) "Acceptor" means a drawee that has accepted a draft. (2) "Drawee" means a person ordered in a draft to make payment. Defendants on 01/26/2006 Indorsed as "PAY TO THE ORDER OF" "WITHOUT RECOURSE" as a Restrictive Special indorsement converting the Promissory Note to a Draft of the California Commercial Code with Defendants as the Acceptor and Maker, A maker of a note is obliged to pay the note: (2) The obligation is owed to a person, entitled to enforce the note or to Plaintiff (CONNIE HILL) as an indorser that paid the note pursuant to California Commercial Code. Defendants are liable to Connie Hill for payment as the original obligor, as she has been discharged from Liability on the COGNOVIT JUDGMENT NOTE due to the Impairment of RECOURSE and Impairment of the COGNOVIT JUDGMENT NOTE as Collateral without  Reservation of Rights under the Deed of Trust as a Suretyship Defense under California Commercial Code, Defendants having taken the COGNOVIT JUDGMENT NOTE with knowledge of these facts.

14.     Defendants as de facto Original Servicing Companies were not Licensed Lenders or Loan Originators in the State of California nor are they National Banking Associations. There does not appear to be a Master Form Mortgage FORM 3036 filed or recorded as a Condition Precedent to Foreclosure under Rule 9 (C) Pleading Special Matters of the California Rules Civil Procedure. (SEE Third Fed. S&L Ass'n v. Haydu, 2012 Ohio 2887 "as the affidavit in support of the motion for summary judgment did not supply the missing terms of the mortgage or incorporate a copy of the master mortgage, the savings and loan association failed to meet its initial burden of establishing the absence of a question of material fact on the issue. Accordingly, the trial court erred in granting summary judgment in favor of the association." This case is in line with California equal footing and equal protection and full faith and credit) Outcome: The judgment was reversed, and the cause was remanded for further proceedings.

15.    Also, DEFENDANT'S DEFAULT AND FORECLOSURE COMPLAINT are barred by the California Statute of Limitations and California Statute of Frauds as it relates to Loan Agreements and Statute of limitations in contracts for sale (UCC 2-725) due to the lack of accrual and tolling.

16.    DEFENDANT'S Claim also violates the Public Policy and Bankruptcy of HJR. 192 of June 05, 1933 codified to 31 USC 5118 (d)(2).

**§ 5118. Gold clauses and consent to sue**
(a)  In this section--
(1)  "gold clause" means a provision in or related to an obligation alleging to give the obligee a right to require payment in--
(A)  gold;
(B)  a particular United States coin or currency; or
(C)  United States money measured in gold or a particular United States coin or currency.
(2)  "public debt obligation" means a domestic obligation issued or guaranteed by the United States Government to repay money or interest.
(b)  The United States Government may not pay out any gold coin. A person lawfully holding United States coins and currency may present the coins and currency to the Secretary of the Treasury for exchange (dollar for dollar) for other United States coins and currency (other than gold and silver coins) that may be lawfully held. The Secretary shall make the exchange under regulations prescribed by the Secretary.

(1)  The Government withdraws its consent given to anyone to assert a claim against the Government, its agencies, or its officers, employees, or agents, a claim—

(A)  on a gold clause public debt obligation or interest on the obligation;
(B)  for United States coins or currency; or
(C)  arising out of the surrender, requisition, seizure, or acquisition of United States coins or currency, gold, or silver involving the effect or validity of a change in the metallic content of the dollar or in a regulation about the value of money.
(2)  Paragraph (1) of this subsection does not apply to a proceeding in which no claim is made for payment or credit in an amount greater than the face or nominal value in dollars of public debt obligations or United States coins or currency involved in the proceeding.
(3)  Except when consent is not withdrawn under this subsection, an amount appropriated for payment on public debt obligations and for United States coins and currency may be expended only dollar for dollar.
**(d)**
(1)  In this subsection, "obligation" means any obligation (except United States currency) payable in United States money.
**(2) An obligation issued containing a gold clause or governed by a gold clause is discharged on payment (dollar for dollar) in United States coin or currency that is legal**

**tender at the time of payment. This paragraph does not apply to an obligation issued after October 27, 1977.**
(1) The loan agreement is intended by the parties to be signed by the debtor but not by an officer or other authorized representative of the financial institution under § 1311.0011.
(3) "Lending institution" means any person that enters into a contract with the owner, part owner, purchaser, or lessee to provide financing for a home construction contract or a home purchase contract, which financing is secured, in whole or in part, by a mortgage on the real estate upon which the improvements contemplated by the home construction contract are to be made or upon the property that is the subject of the home purchase contract, and that makes direct disbursements under the contract to any original contractor or the owner, part owner, purchaser, or lessee.

17.    Nowhere does WMC MORTAGE, LLC Complaint list the conditions precedent to foreclosure and, other than this general allegation, WMC MORTAGE, LLC has never argued that it complied with, for example, the requirements precedent to foreclosure set forth by 24 C.F.R. 201.50(b). By full faith and credit see also BAC Home Loans Servicing v. Taylor, 9th Dist. No. 26423, 2013-Ohio-355, ¶ 14 (collecting cases and holding that "if the terms of the note and mortgage subject it to HUD regulations regarding default and acceleration, then a homeowner may use a servicer's failure to comply with those regulations to defend a foreclosure action"); CitiMortgage, Inc. v. Ferguson, 5th Dist. No. 2006CA00051, 2008-Ohio-556, ¶ 33 (holding that the plaintiff's failure to offer evidence that it followed the notice requirements of 24 C.F.R. 201.50(b) created a genuine issue of fact, rendering the matter inappropriate for summary judgment).

24 CFR 203.602, which provides, "The mortgagee shall give notice to each mortgagor in default on a form supplied by the Secretary or, if the mortgagee wishes to use its own form, on a form approved by the Secretary, no later than the end of the second month of any delinquency in payments under the mortgage." The court found that the lender's affidavit did not attest that its form was either "supplied by the Secretary" or "approved by the Secretary." The court thus found that the borrower's vague challenge to the propriety of the lender's notice was sufficient to establish that a genuine issue of material fact existed. The court remanded the case to the trial court to determine whether the lender's form complied with the regulation."

18. DEFENDANTS are not registered with the SECURITIES EXCHANGE COMMISSION to sell securities as LAWFUL or LEGAL TRANSFER AGENTS since 2010 under 17 CFR § 240.17Ac2-2 and never filed any TA-1 and TA-2 REPORTING FORMS with the SECURITIES

EXCHANGE COMMISSION, which is an Annual reporting requirement for registered transfer agents. The alleged "mortgage loan" was actually an investment agreement with plaintiff the actual depositor/investor and is owed a return on investment.

Defendants **were not the Lenders or the Source of the Funds** at closing on 01/26/2006, but borrowed Credit from a Warehouse Lender under Title 7 §241 et. seq., through the International Finance Corporation and World Bank that set up warehouse lines of credit. **Warehouse Lending is not Mortgage Lending**. A warehouse line of credit allows Defendants to finance a loan without using their own capital. Defendants used a Bankruptcy Remote Entity as a special purpose vehicle (or special purpose entity) ("SPV") that was formed to hold a defined group of assets and to protect them from being administered as property of a bankruptcy estate. That the transactions, transfers and payments on 01/26/2006 were fraudulent under the applicable state Uniform Fraudulent Transfer Act and are voidable under §§544, 545, 547 and 548(B) of Title 11 of the U.S. Bankruptcy Code and Defendants lack standing and capacity as Real Parties of Interest and Ratification of Commencement due to the lack of subject matter jurisdiction under the state Rules of Civil Procedure, Rules 12b(1)(2)(6) and 17A (RE: Real Party in Interest).

See https://en.wikipedia.org/wiki/Warehouse_line_of_credit

a). DEFENDANTS made Fraudulent Transfers as de Facto Creditors on 01/26/2006 under the UNIFORM FRAUDULENT TRANSFER ACT which are voidable under §§ 544, 545, 547 and 548(B) of Title 11 of the U.S. BANKRUPTCY CODE.

(using Ohio State Code corresponding to California Commercial Code in line with equal footing, equal protection and full faith and credit)

§1336.04 Transfer made or obligation incurred fraudulent as to creditor.
(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
§1336.05 Claims arising before the transfer or obligation incurred.
(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
(B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the

debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

§1336.06 When transfer made or obligation incurred.

For the purposes of this chapter:

(A)

(1) A transfer is made if either of the following applies:

(a) With respect to an asset that is real property other than a fixture, but including the interest of a seller or purchaser under a contract for the sale of the asset, when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee;

(b) With respect to an asset that is not real property or that is a fixture, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this chapter that is superior to the interest of the transferee.

(2) (a) If applicable law permits the transfer to be perfected as provided in division (A) of this section and the transfer is not so perfected before the commencement of an action for relief arising out of a transfer that is fraudulent under section 1336.04 or 1336.05 of the Revised Code, the transfer is deemed made immediately before the commencement of the action.

(b) If applicable law does not permit the transfer to be perfected as provided in division (A) of this section, the transfer is made when it becomes effective between the debtor and the transferee.

(3) A transfer is not made until the debtor has acquired rights in the asset transferred.

(B) An obligation is incurred as follows:

(1) If oral, when it becomes effective between the parties;

(2) If evidenced by a writing, when the writing executed by the obligor is delivered to or for the benefit of the obligee.

After an investor has been selected, the mortgage banker draws on the warehouse line of credit to fund a mortgage and sends the loan documentation to the warehouse credit-providing institution to act as a collateral for the line of credit; the warehouse lender, at this stage, perfects a security interest in the mortgage note to serve as collateral. When the loan is finally sold to a permanent investor, the line of credit is paid off by wired funds from this permanent investor to the warehouse facility and the cycle starts all over again for the next loan.

19.    The Liabilities of the Fixed Rate Note on 01/26/2006 were derecognized and extinguished when DEFENDANTS sold the instrument to Warehouse Lenders, Special-Purpose Entity a/k/a a Bankruptcy Remote Entity to Investors and relinquished control and ownership under FASB 95 [FINANCIAL ACCOUNTING STANDARD BOARD] 140 Paragraph No. 9 and FASB 166 Paragraph No. 5; Paragraph 5, as amended:

The Board concluded that an objective in accounting for transfers of financial assets is for each entity that is a party to the transaction to recognize only assets it controls and liabilities it has incurred, to derecognize assets only when control has been surrendered, and to derecognize liabilities only when they have been extinguished. Sales and other transfers may frequently result in a disaggregation of financial assets and liabilities into components, which become separate assets and liabilities.

20.    That due to the lack of Ratification of Commencement by DEFENDANTS as Real Parties in Interest, there is a threshold issue as to standing under Article VI §§ 1, 7 & 9 and Article 3 § 2 of the Constitution that needs to be addressed by UNITED STATES BANKRUPTCY COURT in Special Equity by its trustees sua sponte, as a Party that seeks relief from automatic stay must be a "real party in interest." 11 U.S.C.A. § 362(d); Fed. Rules Bankr. Proc. Rules 4001, 7017, 9014, 11 U.S.C.A. In re Kang Jin Hwang 396 B.R. 757, Defenders of Wildlife, 504 U.S. at 559-61, 112 S.Ct. at 2136. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."   Warth, 422 U.S. at 498, 95 S.Ct. at 2205. A plaintiff has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision. Defenders of Wildlife, 504 U.S. at 559-61, 112 S.Ct. at 2136.    An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. Id. These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." Id. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.' " Id. at 561, 112 S.Ct. at 2137 (quoting Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990). This case lacks an explicit "case" or "controversy" requirement 14.

21.    A cursory read of plaintiff's documents will reveal that there are so many irregularities in said legal relation among The Parties that a Robosigner is a certainty in this case as well.

22.    It is important to note that **defendants** in the state case **never responded, never made a general appearance or filed an answer or denied Plaintiff's motion to vacate a void judgment,**

**or rebutted to the Affidavit in Support** leaving plaintiff in this case as the ONLY party with testimonial evidence in any court of record by making a general appearance in the state court who lacked subject matter and in persona jurisdiction under of State of California civil procedure 12 b (1)(2)(6).

23.    All of the so-called Evidence and alleged Testimony presented on behalf of Defendants came from David R. Endres acting in consort with the de facto Plaintiff, N.A. ET AL on or about July 2007 and is inadmissible under the  RULES OF EVIDENCE 401, 402, 403, 601, 602, 603, 801, 802, 803, 901, 902, 903 and 1001 and is objected to on the grounds lack of foundation, competency, personal knowledge, oath and affirmation and Judicial Misconduct in office-forfeiture of the State of California Code as Newly Discovered Evidence.

24.    DEFENDANT Lacks Attachment and enforceability of security interest - proceeds - supporting obligation - formal requisites - under U.C.C. § 9-203. And, Attachment and enforceability of security interest - proceeds - supporting obligation - formal requisites - UCC 9-203 (A)(B) of Article 9.

  a). DEFENDANT Lacks Security interest arising in purchase or delivery of financial asset UNDER UCC § 9-206 of Article 9.

  b). DEFENDANT lacks Perfection of security interests in property of Plaintiff subject to certain under statutes, regulations, and treaties, Treaty of Peace of 1783 – under U.C.C. § 9-311 .

  c). DEFENDANT Lacks Perfection of security interests in chattel paper, negotiable documents, instruments, or investment property UNDER UCC § 9-312 (A)(B .

  d). DEFENDANT Lacks Control in tangible negotiable documents, goods, instruments, money, or tangible chattel paper by possession under UCC 9-313.

  e). DEFENDANT Lacks (A) A security interest in investment property, deposit accounts, letter-of-credit rights, electronic chattel paper, or electronic documents that may be perfected by control of the collateral under U.C.C 9-314 (A)(B).

  f). DEFENDANT retained no interest in right to payment that was sold with respect to rights and title as a seller of account or chattel paper with respect to creditors and purchasers – under U.C.C. 9-318.

25.    DEFENDANT is not a Holder in due course under UCC §§ 3-302 and corresponding California Code (see **Exhibit 1**).

26. Defendant is in possession of an investment [contract] proceeds from plaintiff, which they invested in the form of a constructive trust with plaintiff as grantor and third-party beneficiary in accord with Horace v. LaSalle, supra. In equity (see Pomeroy) it is a maxim of law that:

    a. Equity looks upon that as done which ought to have been done,
    b. Equity suffers not a right without a remedy,
    c. Equality is equity,
    d. Equity regards substance rather than form,
    e. Where the equities are equal, the first in time will prevail,
    f. Where equities are equal, the law will prevail,
    g. Equity follows the law,
    h. He who seeks equity must do equity,
    i. He who seeks equity must have clean hands,
    j. Equity aids the vigilant, not those who sleep on their rights,
    k. Delay defeats equity,
    l. Equity will not concern itself with abstract wrongs,
    m. Equity abhors a forfeiture,
    n. Equity does not require an idle gesture,
    o. Equity will not permit a party to profit by his own wrong,
    p. Equity delights to do justice, and not by halves, and
    q. Equity will take jurisdiction to avoid a multiplicity of suits.

## COUNT I: RECOVERY OF AVOIDABLE PREFERENCE PAYMENTS;

## COUNT II: MANDATORY JUDICIAL NOTICE UNDER F.R.E. 201 Judicial Notice of Adjudicative Facts;

(a) Scope. This rule governs judicial notice of an adjudicative fact only, not a legislative fact.

(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Judicial notice of matters of foreign law is treated in F.R.C.P. RULE 9 and Rule 44.1 of the Federal Rules of Civil Procedure and Rule 26.1 of the Federal Rules of Criminal Procedure;

27. The LAW FIRM David R. Endres CA sba: 123564 allegedly REPRESENTING THE DEFENDANT WMC MORTAGE, LLC are Unregistered Foreign Agents of a Foreign Principal under Title 22 § 611 (a)(b)(1)(2)(3) and § 612(a). The term "registration statement" means the registration statement required to be filed with the Attorney General under section 612(a) of this title, and any supplements thereto required to be filed under section 612(b) of this title, and includes all documents and papers required to be filed therewith or amendatory thereof or supplemental thereto, whether attached thereto or incorporated therein by reference; 22 U.S.C. § 614(b) IDENTIFICATION STATEMENT;

> "It shall be unlawful for any person within the United States who is an agent of a foreign principal and required to register under the provisions of this subchapter to transmit or cause to be transmitted in the United States mails or by any means or instrumentality of interstate or foreign commerce any informational materials for or in the interests of such foreign principal without placing in such informational materials a conspicuous statement that the materials are distributed by the agent on behalf of the foreign principal, and that additional information is on file with the Department of Justice, Washington, District of Columbia. The Attorney General may by rule define what constitutes a conspicuous statement for the purposes of this subsection."

Under 22 U.S. Code § 618 enforcement and penalties THE DEFENDANT and The LAW FIRM DAVID R. ENDRES 123564 REPRESENTING THE DEFENDANT who willfully makes a false statement of a material fact or willfully omits any material fact required to be stated therein or willfully omits a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both, except that in the case of a violation of subsection (b), (e), or (f) of section 614 of this title or of subsection (g) or (h) of this section the punishment shall be a fine of not more than $5,000 or imprisonment for not more than six months, or both.

28. THE DEFENDANT and The LAW FIRM DAVID R. ENDRES REPRESENTING THE DEFENDANT are barred as Unregistered Agents of a Foreign Principal by 22 USC §§ 611-622 OF THE Foreign Principal Registration Act of 1938 and 28 CFR § 5.200 – Registration from asserting a Claim in the United States Bankruptcy Court herein and the SUPERIOR COURT OF CALIFORNIA.

§ 5.200 Registration.

(a) Registration under the Act is accomplished by the filing of an initial statement together with all the exhibits required by § 5.201 and the filing of a supplemental statement at intervals of 6 months for the duration of the principal-agent relationship requiring registration.
(b) The initial statement shall be filed on a form provided by the Registration Unit.
(28 U.S.C. 509 and 510; 5 U.S.C. 301).
[Order No. 376-67, 32 FR 6362, Apr. 22, 1967, as amended by Order No. 960-81, 46 FR 52355, Oct. 27, 1981; Order No. 2674-2003, 68 FR 33630, June 5, 2003.

29.   The Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs **1 through 26 above**.

30. The payments that has been identified (the "Payments"), constitute transfers of property of the Plaintiff/Creditor to or for the benefit of the Defendant, who was an alleged creditor of the Plaintiff.

31. The Law Merchant of William Murray, 1st Earl of Mansfield 1705-1793, which Supplements the Ohio Uniform Commercial Code under § 1301-103 (A) (1)(2)(3) (B) all Transfers and Assignments of a Note Prior to or After Maturity Constitute a Payment see Case Law below;
ORC Ann. 1303.54 (in line with equal footing, equal protection and full faith and credit);

(E) If a draft states that it is drawn "without recourse" or otherwise disclaims liability of the drawer to pay the draft and the draft is not a check, the drawer is not liable under division (B) of this section to pay the draft. A disclaimer of the liability stated in division (B) of this section is not effective if the draft is a check.

SEE [Gordon v. Wansey, 21 Cal. 77, year 1862 ] "We submit, as one of the best established principles of the Law-Merchant, that where a negotiable note is paid by one of the makers it becomes functus officio satisfied and extinguished, and is no longer negotiable, and that the indorsement or assignment, after maturity, of the note so paid by one or more of the makers paying it can give no right of action to such indorsee or assignee, except as against such indorser or assignor."

[79] "This is an action upon seven promissory notes of which the plaintiff claims to be the holder by assignment. Six of these notes, payable to different parties, were assigned to one of the makers, and by him to the plaintiff. The first assignment was before and the second after maturity, and the question arises as to the effect of these assignments."

"It is contended that the first assignment extinguished the notes, and that the subsequent transfer vested no right of action in the holder. The notes are payable to order and, of course, are negotiable; but the complaint merely alleges that for a valuable consideration they were assigned, etc. Authorities are cited to show that a transfer of this character vests in the holder such rights only as he would acquire upon an assignment of a note not negotiable. This point is made with reference to certain matters relied upon as counter claims, and is not important if it be held that the notes were extinguished by the first assignment. We are of opinion that the transaction amounted to payment, and that the notes became functus officio, and were not revived by the assignment to the plaintiff. If the rights of the plaintiff had attached before maturity, and his position were that of an innocent holder, he would be [80] entitled to protection, but under the circumstances the action cannot be maintained. It is clear that the notes could not have been enforced by his assignor and having taken them with a knowledge of that fact, they are equally unavailable in his hands. What his rights are in respect to contribution it is unnecessary to decide; the action is based upon the notes, and in rejecting them it cannot be sustained. It is possible that the plaintiff may recover upon the notes as against the assignor, but however this may be, the present judgment is erroneous."

Judgment reversed and cause remanded.

Overview: "Where an assignment on the first note was before maturity and the assignment of the remaining notes was after maturity, the transaction amounted to payment, and the notes became functus officio and were not revived by the assignment to the holder."

Further the above transactions smack of Factoring or Forfaiting of Receivables by Defendants. Factoring is not the same as invoice discounting (which is called an "Assignment of Accounts Receivable" in American accounting – as propagated by IASB and FASB within GAAP).[9][3] Factoring is the sale of receivables, whereas invoice discounting ("assignment of accounts receivable" in American accounting) is a borrowing that involves the use of the accounts receivable assets as collateral for the loan.[3][10]

32. The Payments were made for, or, on account of antecedent debts allegedly owed by the Plaintiff/Creditor to the Defendant/Debtor.

33. The Plaintiff/Creditor was presumptively and actually insolvent at the time of the Payments.

34. The Payments were made on 01/26/2006 or within the 90 days before the Petition Date.

35. By virtue of the Payments, the Defendant received more than it should have received if the Debtor's Estate had been liquidated under Chapter 11 the Payments had not occurred, and the Defendant had received payments of the debts to the extent not permitted by the Bankruptcy Code.

36. The Payments constitute avoidable preferences pursuant to 11 USC § 547(b) of the Bankruptcy Code.

COUNT III: TO RECOVER PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §550

37. The Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs **1 through 34 above**.

38. Defendant was the initial transferee of the Payments or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Payments were made.

39. Unless otherwise determined after a trial, pursuant to 11 U.S.C. §550(a), Plaintiff is entitled to recover from Defendant the sum of $[400,500.00] plus interest thereon to the date of payment.

COUNT IV: TO DISALLOW DEFENDANTS CLAIMS PURSUANT TO 11 U.S.C. §502(d);

40. The Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs I through 37 above.

41. Defendant was the initial transferee of the Payments or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Payments were made.

42. Pursuant to 11 U.S.C. § 502(d), any claims of Defendant against the Debtor must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of all the Avoidable Transfers, plus interest thereon and costs.

**PRAYER FOR RELIEF;**

WHEREFORE, the Plaintiff respectfully requests that this Court grant judgment as follows:

(a)     Declare the Payments to be avoidable preferences and award judgment against the Defendants in the amount indicated;

(b)     Award pre-judgment and post-judgment interest;

(c)     Pursuant to 11 U.S.C. § 502(d), disallow, any claim of Defendants against Debtor; and

(d)     Grant such other and further relief to the Plaintiff as may be just and proper.

**VERIFICATION:**
I declare under penalty of perjury under the laws of the United States of America that the foregoing Adversary Complaint is true and correct.
Executed on this ⎯⎯day of September 2019.

Connie: Family of Hill

11448972                                                11448972

If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

- Borrower - CONNIE HILL - Date -

Pay to the order of

without recourse

Jessica Fuentes
Assistant Secretary
WMC Mortgage Corp.

[Sign Original Only]

MULTISTATE ADJUSTABLE RATE NOTE – 6-month LIBOR Index (Business Day Lookback) – Single Family –
DOCUDPV4
DOCUDPY4.VTX  08/25/2005