**<u>EXHIBIT I</u>**

**Form of Mortgage Reconciliation Work Escrow Agreement**

EXECUTION VERSION

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT**, dated as of _____, 2020 ("Agreement"), is by and between Newport Coast Law Group, P.C., a California corporation (the "Service Provider"), and Phoenix Corporate Recovery Services, LLC (the "Escrow Agent" and together with the Service Provider, each a "Party" and collectively, the "Parties").

## BACKGROUND

WHEREAS, on April 23, 2019, WMC MORTGAGE, LLC, a Delaware limited liability company ("Debtor") filed a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on November 5, 2019, the Bankruptcy Court entered an order (D.I. 316) confirming that certain First Amended Chapter 11 Plan of Liquidation of WMC Mortgage, LLC (D.I. 303) (the "Plan");

WHEREAS, in accordance with Section V.D.2 of the Plan, the Post-Effective Date Debtor deposited the Mortgage Reconciliation Work Funds (as defined in the Plan) in a segregated account;

WHEREAS, pursuant to Section V.L.6 of the Plan, in the event the Mortgage Reconciliation Work (as defined in the Plan) is not completed prior to the termination of the Post-Effective Date Debtor, the Post-Effective Date Debtor is required to (a) execute the Power of Attorney in favor of the Service Provider, and (b) transfer all remaining Mortgage Reconciliation Work Funds (the "Escrow Funds") to the Escrow Account (as defined herein);

WHEREAS, the existence of the Post-Effective Date Debtor as a Delaware limited liability company will be terminated on or about March 1, 2020;

WHEREAS, the Power of Attorney was executed by the Post-Effective Date Debtor prior to its termination;

WHEREAS, the Mortgage Reconciliation Work will not have been completed prior to the termination of the Post-Effective Date Debtor and the Service Provider has agreed to conduct the Mortgage Reconciliation Work after such termination; and

WHEREAS, the Escrow Agent has agreed to accept, hold, and disburse the Escrow Funds as provided for by the terms and conditions of this Agreement and as contemplated by the Plan.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, for themselves, their successors and assigns, hereby agree as follows:

1.      Definitions; Interpretation.  Capitalized terms used in this Agreement without definition shall have the respective meanings given to them in the Plan.  The following terms shall have the following meanings when used herein:

"Business Day" means any day, other than a Saturday, Sunday or other day on which commercial banks in the City of New York, New York are required or authorized by Law to be closed.

"Escrow Funds" has the meaning set forth in the Recitals and includes the funds deposited with the Escrow Agent pursuant to Section 3 of this Agreement, together with any interest and other income thereon.

"Escrow Period" means the period commencing on the date hereof and ending at the earlier of (i) the close of the Business Day following the date upon which the Service Provider certifies in writing to the Escrow Agent that the Mortgage Reconciliation Work has been completed and the Escrow Agent agrees in writing with such determination or (ii) the closing of the Business Day following the date upon which the Escrow Agent certifies in writing to the Service Provider that there are insufficient Escrow Funds to pay the Service Provider for its fees and expenses that are reasonably expected to be reflected on the next Monthly Statement.

"Indemnified Party" has the meaning set forth in Section 11.

"Monthly Fee" has the meaning set forth in Schedule 1.

"Monthly Statement" has the meaning set forth in Section 4(c).

"Monthly Service Threshold" has the meaning set forth in Schedule 1.

"New Inventory" means third party requests received after the Effective Date relative to the Mortgage Reconciliation Work.

"Representative" means any affiliate, officer, director, employee, partner, member, manager, agent or advisor of a party to this Agreement.

"Static Inventory" means Mortgage Reconciliation Work outstanding on the Effective Date.

"Technical Support Agreement" means that certain Statement of Work, dated _____, 2020, by and between GE Capital US Holdings, Inc. and the Technical Support Provider related to certain data hosting, maintenance and support services to be provided by the Technical Support Provider in connection with the Mortgage Reconciliation Work.

"Technical Support Escrow Account" means the segregated bank account in the name of the Service Provider established to hold the Technical Support Funds.

2

"Technical Support Funds" means an amount equal to $700,000.00.

"Technical Support Provider" means Tech Mahindra, Ltd. and its successors and assigns.

For the purposes of this Agreement, when measuring a month or a monthly period, such month or monthly period shall commence on the fifteenth (15th) day of the relevant calendar month and end on the fourteenth (14th) day of the next calendar month. When any action is provided for herein to be done on or by a specified date that falls on a day other than a Business Day, such action may be performed on the following Business Day.

2.    Appointment of and Acceptance by Escrow Agent. Pursuant to the Plan, the Escrow Agent shall serve as escrow agent hereunder. The Escrow Agent hereby accepts such appointment and, upon receipt by wire transfer of the Escrow Funds in accordance with Section 3, shall hold, invest and disburse the Escrow Funds in accordance with this Agreement.

3.    Deposit of Escrow Funds. Pursuant to the Plan, when the Post-Effective Date Debtor determines to transfer the Mortgage Reconciliation Work to the Service Provider and prior to the Post-Effective Date Debtor's termination, the Post-Effective Date Debtor will transfer the Escrow Funds in the amount of $[_____], which is all remaining Mortgage Reconciliation Work Funds by wire transfer of immediately available funds, to an account designated by the Escrow Agent (the "Escrow Account"). If the remaining Mortgage Reconciliation Work Funds have not been transferred by the Post-Effective Date Debtor prior to the earlier of its dissolution and winding up of its affairs or the date of this Agreement, the Service Provider, to whom the Power of Attorney was granted, shall cause the transfer of such funds to the Escrow Account. The Escrow Funds will remain uninvested except as provided in Section 6 and shall be held in a segregated deposit account or sub-account separate from any of the Escrow Agent's other assets as provided for in Section 6.

4.    Disbursements of Escrow Funds and Statement Requirements.

(a)    *Initial Monthly Fee, Advance and Retainer.* On the date hereof, the Escrow Agent shall disburse from the Escrow Account to an account designated by the Service Provider the sum of (i) the initial Monthly Fee (as defined on Schedule 1) prorated based on the number of calendar days between the date of this Agreement and (A) the fourteenth (14th) day of the current calendar month (if this Agreement is dated on or before the fourteenth (14th) day of the calendar month) or (B) the fourteenth (14th) day of the next calendar month (if this Agreement is dated on or between the fifteenth (15th) day and last day of the calendar month) plus (ii) an advance in the amount of one Monthly Fee, which will be credited towards the last month of fees for performing the Mortgage Reconciliation Work, plus (iii) $130,000 as a retainer for the Service Provider to perform Mortgage Reconciliation Work. If the Service Provider still has any retainer funds after this Agreement is terminated, the Service Provider shall continue to perform the Mortgage Reconciliation Work until the retainer funds are depleted. The preceding sentence shall survive the termination of this Agreement until the retainer funds are depleted.

*(b)    Technical Support Escrow Account and Technical Support Funds.* Within three (3) business days of the date hereof, the Escrow Agent shall transfer the Technical Support Funds from the Escrow Account to the Technical Support Escrow Account. The Technical Support

Funds will remain uninvested and shall be held in the Technical Support Escrow Account separate from any of the Service Provider's other assets. All interest earned on the Technical Support Funds shall be included in the Technical Support Funds and disbursed in the same manner as the principal portion of the Technical Support Funds. Each month the Service Provider shall disburse Technical Support Funds necessary to pay the Technical Support Provider in accordance with the Technical Support Agreement. The Escrow Agent shall have no obligation with respect to the Technical Support Funds while they are held by the Service Provider in the Technical Support Escrow Account. Upon the expiration of the Technical Support Agreement, the Service Provider shall apply any remaining Technical Support Funds to the Monthly Fee due on the first date after such expiration. Thereafter the Service Provider shall transfer any remaining Technical Support Funds to the Escrow Account for distribution by the Escrow Agent in accordance with the terms hereof.

(c) *Statement Requirements and Payment of Fees and Expenses for Subsequent Monthly Fees.* After the initial Monthly Fee, no later than the fifteenth (15th) day of each calendar month, the Service Provider shall provide a monthly fee statement to Escrow Agent which shall serve as its request for payment of Service Provider's fees and expenses for performing the Mortgage Reconciliation Work over the previous thirty (30) day period, with each such statement and the fees and expenses provided for therein being incurred in accordance with <u>Schedule 1</u> hereto (the "<u>Monthly Statement</u>"), <u>provided</u>, <u>however</u>, the failure of the Service Provider to deliver the Monthly Statement on or before the fifteenth (15th) day of each calendar month shall not prejudice the Service Provider's right to be paid its fees or expenses earned or incurred in accordance with the terms of this Agreement; <u>provided further, however</u>, that in the event the Service Provider fails to timely deliver the Monthly Statement, the Escrow Agent's deadline to review such Monthly Statement and disburse the related Monthly Fee shall not commence until such Monthly Statement is delivered to the Escrow Agent. The Monthly Statement shall provide sufficient detail of the Mortgage Reconciliation Work performed and expenses incurred by or on behalf of Service Provider during the applicable thirty (30) period (including, if applicable, an explanation for failure to satisfy the Monthly Service Threshold for the relevant thirty (30) day period) to enable the Escrow Agent to confirm that the Monthly Statement and the fees and expenses reflected therein have been earned or incurred (as applicable) in accordance with <u>Schedule 1</u> and that the current Monthly Fee should be disbursed from the Escrow Funds. Within five Business Days of receipt of a Monthly Statement, the Escrow Agent shall either (i) provide written notice to the Service Provider of an objection to the Monthly Statement and request further supporting information regarding the work performed and/or the expenses incurred or the explanation for the failure to satisfy the Monthly Service Threshold, or (ii) if the Monthly Service Threshold is met or the Escrow Agent is otherwise reasonably satisfied with Service's Provider's explanation for failure to satisfy the Monthly Service Threshold, pay the Monthly Fee from the Escrow Funds. Upon a request for further supporting information in accordance with (i) above, the Service Provider shall provide such further supporting information within five (5) days. For the ten (10) day period commencing on the date that the Escrow Agent receives the further supporting information relating to the Monthly Statement in dispute, the Service Provider and the Escrow Agent shall use commercially reasonable efforts to resolve the Escrow Agent's objections. As soon as practicable after resolution of the Escrow Agent's objection to a Monthly Statement, the Escrow Agent shall disburse the Escrow Funds in accordance with the agreed resolution. In the event the Escrow Agent's objections are not resolved, the parties hereto shall resolve such dispute pursuant to <u>Section 20</u> hereof.

4

(d)    The Monthly Statement must contain complete payment instructions, including funds transfer instructions or an address to which a check should be sent, to the extent the payment instructions are different from the payment instructions provided for on the previous Monthly Statement.  For any month in which the Monthly Fee is disbursed from the Escrow Funds, such Monthly Fee shall be deemed earned when disbursed.  If the inventory for the previous month is not reduced by Monthly Service Threshold without sufficient explanation being provided to the Escrow Agent for why such Monthly Service Threshold was not achieved, as determined by the Escrow Agent, the Escrow Agent reserves the right not to disburse from the Escrow Account the Monthly Fee or a portion thereof for the current month.  The previous sentence notwithstanding, if the dispute resolution process is commenced under Section 4(c) or Section 20 to resolve the disbursement of Escrow Funds, upon resolution of such dispute, the Escrow Agent shall be required to promptly disburse from the Escrow Account all Escrow Funds required to be disbursed for the Escrow Agent to comply with such resolution.

(e)    Upon the expiration of the Escrow Period, the Escrow Agent shall distribute any remaining Escrow Funds to the Approved Charity selected by the Escrow Agent in its sole and absolute discretion as promptly as practicable.

5.    Suspension of Performance; Disbursement into Court.  If, at any time, (a) a dispute exists with respect to any obligation of the Escrow Agent under this Agreement, (b) the Escrow Agent is unable to determine to Escrow Agent's sole satisfaction the proper actions with respect to its obligations hereunder, or (c) the Service Provider has not, within 10 days of receipt of a notice of resignation, appointed a successor escrow agent to act under this Agreement, then the Escrow Agent may, in its sole discretion, take either or both of the following actions:

(i)    suspend the performance of any of its obligations (including without limitation any disbursement obligations) under this Agreement until such dispute or uncertainty is resolved under Section 20 or until a successor escrow agent is appointed.

(ii)    petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction, in any venue convenient to the Escrow Agent, for instructions with respect to such dispute or uncertainty to the extent such dispute or uncertainty is not resolved under Section 20 and, to the extent required or permitted by law, pay into such court, for holding and disposition by such court, all Escrow Funds, after deduction and payment to the Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by the Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.

The Escrow Agent will have no liability to the Service Provider or any other Person for any such suspension of performance or disbursement of the Escrow Funds into court, specifically including any liability or claimed liability that may arise due to any delay in any other action required or requested of Escrow Agent.

6.    Investment of Funds.  The Escrow Funds shall be held in the Escrow Account which shall be a deposit account (the "Account") at a bank (the "Bank") selected by the Escrow Agent in its sole and absolute discretion, provided that such Bank must have aggregate deposits on the date hereof of at least $10,000,000,000 and the Escrow Account shall be a segregated deposit account

or sub-account separate from any of the Escrow Agent's other assets. The Escrow Agent shall provide the Service Provider with a copy of the statement for the bank account in which the Escrow Funds are deposited on no less than a monthly basis. The Escrow Funds shall not be invested and the parties acknowledge that the Account selected by the Escrow Agent may be at the lowest available interest rate, and the Escrow Agent shall have no liability for any interest rate selected or the yield from that rate or if the Escrow Funds bear any interest. All interest earned on the Escrow Funds shall be included in the Escrow Funds and disbursed in the same manner as the principal portion of the Escrow Funds. The Service Provider hereby waives and releases the Escrow Agent from any and all liability for any loss to the Escrow Funds by reason of any act or omission of the Bank or from any failure or dissolution of the Bank.

7. <u>Tax Reporting</u>. The Escrow Agent has no responsibility for the tax consequences of this Agreement and the Service Provider shall consult with independent counsel concerning any and all tax matters. The Service Provider agrees to assume all obligations imposed now or hereafter by any applicable tax law or regulation with respect to the Escrow Funds, and payments or performance under this Agreement by any party hereto (other than for compensation to the Escrow Agent for performing its services hereunder). The Service Provider may request and direct the Escrow Agent in writing with respect to withholding and other taxes, assessments or other governmental charges, and advise the Escrow Agent in writing with respect to any certifications and governmental reporting that may be required under any applicable laws or regulations. Except as otherwise agreed by the Escrow Agent in writing or as otherwise is required by the United States Internal Revenue Code and related regulations, the Escrow Agent has no tax reporting or withholding obligation. To the extent that U.S. federal imputed interest regulations apply, the Service Provider shall, no later than 5 Business Days after the effective date of this Agreement, so inform the Escrow Agent, provide the Escrow Agent with all imputed interest calculations and direct the Escrow Agent to disburse imputed interest amounts as the Service Provider deems appropriate. The Escrow Agent will rely solely on such provided calculations and information and will have no responsibility for the accuracy or completeness of any such calculations or information. If requested by the Escrow Agent, the Service Provider shall provide the Escrow Agent a properly completed IRS Form W-9 or Form W-8, as applicable, for each payee. If requested tax documentation is not so provided, the Escrow Agent is authorized to withhold taxes as required by the United States Internal Revenue Code and related regulations. The Service Provider has determined that any interest or income on the Escrow Funds will be reported on an accrual basis and deemed to be for the account of the Service Provider.

8. <u>Resignation or Removal of the Escrow Agent</u>. The Escrow Agent may resign and be discharged from the performance of its duties hereunder at any time by giving ten (10) days' prior written notice to the Service Provider specifying a date when such resignation will take effect and, after the date of such resignation notice, notwithstanding any other provision of this Agreement, the Escrow Agent's sole obligation will be to hold the Escrow Funds pending appointment of a successor Escrow Agent and the Escrow Agent shall have no authority to make any payments to the Service Provider from the Escrow Funds after the date of such resignation notice. The Service Provider may petition a court of competent jurisdiction to remove the Escrow Agent for a material breach by the Escrow Agent of this Agreement, or the Escrow Agent's gross negligence or willful misconduct. If the Service Provider fails to appoint a successor Escrow Agent prior to the effective date of such resignation or removal, the Escrow Agent may petition a court of competent jurisdiction to appoint a successor escrow agent, and all costs and expenses

related to such petition shall be paid by the Service Provider. The resigning or removed Escrow Agent shall transmit all records pertaining to the Escrow Funds and shall pay all Escrow Funds to the successor Escrow Agent, after making copies of such records as the resigning or removed Escrow Agent deems advisable and after deduction and payment to the resigning or removed Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by the resigning or removed Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder. After any resigning or removed Escrow Agent's resignation or removal, the provisions of this Agreement will inure to its benefit as to any actions taken or omitted to be taken by it while it was the Escrow Agent under this Agreement.

9.      Resignation, Removal or Incapacity of Service Provider. The Service Provider may resign and be discharged from the performance of its duties hereunder at any time by giving ten (10) days' prior written notice to Escrow Agent specifying a date when such resignation will take effect. Similarly, the Service Provider may be removed for Cause or due to Incapacity at any time by the Escrow Agent giving at least thirty (30) days' prior written notice to the Service Provider specifying the date when such removal will take effect as well as the grounds upon which such notice was issued. The Escrow Agent shall appoint a replacement service provider for the Service Provider that resigned or has been removed and such successor service provider shall execute a counterpart signature page to this Agreement to evidence such successor service provider's agreement to be bound by the terms of this Agreement. In the event of a resignation by or removal of the Service Provider in accordance with this <u>Section 9</u>, the Service Provider shall have no further rights or obligations under the Power of Attorney other than the right to exercise the power of substitution thereunder to comply with the next sentence. Prior to the Service Provider's resignation or removal, the Service Provider shall exercise the power of substitution granted to it by the Post-Effective Date Debtor under the Power of Attorney to substitute any replacement service provider for Service Provider thereunder. For the purposes of this Section, the terms "<u>Cause</u>" and "<u>Incapacity</u>" shall have the following meanings:

"<u>Cause</u>" means (i) a material breach by the Service Provider of this Agreement; or (ii) the Service Provider's gross negligence or willful misconduct; and

"<u>Incapacity</u>" means the death or disability of Mark V. Asdourian or any person that controls the management and affairs of the Service Provider.

10.      Duties and Liability of the Escrow Agent.

(a)      The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties will be implied. The Escrow Agent has no fiduciary or discretionary duties of any kind. The Escrow Agent has no liability under and no duty to inquire as to the provisions of any document other than this Agreement, including without limitation any other agreement between any or all of the parties hereto or any other persons even though reference thereto may be made herein and whether or not a copy of such document has been provided to the Escrow Agent. The Escrow Agent's sole responsibility is to hold the Escrow Funds in accordance with the terms of this Agreement. The Escrow Agent will not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. This Agreement will terminate upon the distribution of all the Escrow Funds pursuant to any applicable provision of this Agreement, and

the Escrow Agent will thereafter have no further obligation or liability whatsoever with respect to this Agreement or the Escrow Funds, <u>provided</u>, <u>however</u>, the termination of this Agreement for any reason shall not relieve any Party from liability for a breach of this Agreement prior to such termination.  This provision shall survive the termination of this Agreement indefinitely.

(b)     Neither the Escrow Agent nor any of its agents will be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines, which determination is not subject to appeal, that the Escrow Agent's or its agent's gross negligence or willful misconduct in connection with its material breach of this Agreement was the sole cause of any loss to Service Provider.  The Escrow Agent may retain and act hereunder through agents; <u>provided, however</u>, that subject to the above limitation of liability for any such agents, the Escrow Agent shall remain liable hereunder for any actions taken by its agents.

(c)     The Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which the Escrow Agent believes to be genuine and to have been signed or presented by the person or parties purporting to sign the same.  In no event will the Escrow Agent be liable for (i) acting in accordance with or conclusively relying upon any instruction, notice, demand, certificate or document believed by the Escrow Agent to have been created by or on behalf of the Service Provider, (ii) incidental, indirect, special, consequential or punitive damages or penalties of any kind (including, but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such damages or penalty and regardless of the form of action or (iii) any amount greater than the value of the Escrow Funds as valued upon deposit with the Escrow Agent.

(d)     The Escrow Agent will not be responsible for delays or failures in performance resulting from a Force Majeure Event (as defined below) beyond its control.  The Escrow Agent will not be obligated to take any legal action in connection with the Escrow Funds, this Agreement or the Plan or to appear in, prosecute or defend any such legal action or to take any other action that in Escrow Agent's sole judgment may expose it to potential expense or liability.  The Service Provider is aware that under applicable state law, property which is presumed abandoned may under certain circumstances escheat to the applicable state.  The Escrow Agent will have no liability to the Service Provider, its respective heirs, legal representatives, successors and assigns, or any other party, should any or all of the Escrow Funds escheat by operation of law; *provided, however*, that the Escrow Agent shall take all reasonable steps to ensure that the Escrow Funds are not presumed to be abandoned.

(e)     The Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, or relating to any dispute involving this Agreement, and shall incur no liability under this Agreement to Service Provider for acting on the advice on such legal counsel; *provided,* that such act does not constitute gross negligence or willful misconduct.  Escrow Agent may pay for such legal counsel from the Escrow Funds after providing ten (10) days written notice to the Service Provider of such intended payment.  The Service Provider agrees to perform or procure the performance of all further acts and things, and execute and deliver such further documents, as may be required by law or as the Escrow Agent may reasonably request in connection with its duties hereunder.

8

(f)     If any portion of the Escrow Funds is at any time attached, garnished or levied upon, or otherwise subject to any writ, order, decree or process of any court, or in case disbursement of Escrow Funds is stayed or enjoined by any court order, the Escrow Agent is authorized, in its sole discretion, to respond as it deems appropriate or to comply with all writs, orders, decrees or process so entered or issued, including but not limited to those which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction; and if the Escrow Agent relies upon or complies with any such writ, order, decree or process, it will not be liable to Service Provider by reason of such compliance even if such order is reversed, modified, annulled, set aside or vacated.

(g)     The Escrow Agent and any affiliate, stockholder, director, officer or employee of the Escrow Agent may buy, sell and deal in any of the securities of any other party hereto and contract with to any other party hereto and otherwise act as fully and freely as though it were not the Escrow Agent under this Agreement.  Nothing herein will preclude the Escrow Agent from acting in any other capacity for any other party hereto or for any other person or entity.

11.     <u>Use of Escrow Funds for Escrow Agent Indemnification</u>.  The Escrow Agent and each director, manager, member, officer, employee and affiliate of the Escrow Agent (each, an "<u>Indemnified Party</u>") may deduct from the Escrow Account and the Escrow Funds after providing ten (10) days written notice to the Service Provider of such intended deduction, any and all losses, damages, liabilities, penalties, costs and expenses of any kind or nature (including without limitation reasonable attorneys' fees subject to the other provisions of this Section 11, costs and expenses) (collectively, "<u>Losses</u>") arising from any third party claims, actions and proceedings (whether or not valid), arising under this Agreement, except to the extent such Losses are finally determined by a court of competent jurisdiction, which determination is not subject to appeal, to have been directly caused solely by the gross negligence or willful misconduct of such Indemnified Party or the Escrow Agent's material breach of this Agreement.  The indemnification right, benefit and obligation provided for hereunder shall only include the reasonable fees of one counsel and one local counsel to all Indemnified Parties collectively, with respect to any legal proceeding or potential legal proceeding, and shall be paid from the Escrow Funds as provided for above.  The rights of each Indemnified Party under this Section shall survive any termination of this Agreement and the resignation or removal of the Escrow Agent.  For the avoidance of doubt and notwithstanding any provision herein to the contrary, neither Party shall have any indemnity obligations for Losses of the other Party or any Indemnified Party, except to the extent such Losses are finally determined by a court of competent jurisdiction, which determination is not subject to appeal, to have been directly caused solely by the fraud of the Party from which indemnification is sought.

12.     <u>Compensation of Escrow Agent</u>.    The Escrow Agent shall be entitled to compensation for its services in the amount of $7,500 per month (the "<u>Agent Fee</u>"), due and payable on the first of each month this Agreement is in effect, and shall be entitled to be reimbursed for its customary fees and charges for any wire transfers or other depository services rendered in connection with the Escrow Account and any delivery charges or other reasonable and documented out of pocket expenses incurred in connection with the Escrow Funds (collectively, the "<u>Escrow Agent Fees and Expenses</u>"); <u>provided, however</u>, that the Escrow Agent Fees and Expenses shall not include payments made to agents of the Escrow Agent.  For the avoidance of doubt, counsel

engaged by the Escrow Agent in connection with the performance of its obligations under this Agreement shall not be considered an agent of the Escrow Agent for the purposes of this Agreement. The Escrow Agent Fees and Expenses shall be paid from the Escrow Funds. The Service Provider hereby grants to the Escrow Agent the right of setoff against and the right to deduct and disburse from the Escrow Funds and the Escrow Account any compensation or reimbursement due to the Escrow Agent hereunder. On the fifteenth (15th) day of any calendar month that this Agreement is in effect, the Escrow Agent, without the consent of the Service Provider or any other Person, may deduct and disburse the Agent Fee plus any other invoiced Escrow Agent Fees and Expenses from the Escrow Funds and the Escrow Account. The Agent Fee for the first month that this Agreement is in effect shall be prorated based on the number of calendar days between the date of this Agreement and (A) the fourteenth (14th) day of the current calendar month (if this Agreement is dated on or before the fourteenth (14th) day of the calendar month) or (B) the fourteenth (14th) day of the next calendar month (if this Agreement is dated on or between the fifteenth (15th) day and last day of the calendar month) and shall be paid, deducted and disbursed from the Escrow Funds and the Escrow Account on the date hereof or the next Business Day.

13. <u>Representations and Warranties</u>.

(a) The Service Provider makes the following representations and warranties to the Escrow Agent:

(i) It has full power, authority and capacity, to execute and deliver this Agreement and to perform its obligations hereunder; and this Agreement has been duly authorized by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms.

(ii) The execution, delivery and performance of this Agreement by Service Provider does not violate any applicable law or regulation.

(iii) There is no security interest in the Escrow Funds or any part thereof and no financing statement under the Uniform Commercial Code is on file in any jurisdiction or control agreement has been entered into claiming a security interest in or describing (whether specifically or generally) the Escrow Funds or any part thereof.

(b) The Escrow Agent makes the following representations and warranties to the Service Provider:

(i) it has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder; and this Agreement has been duly authorized by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms.

(ii) the execution, delivery and performance of this Agreement by the Escrow Agent does not violate any applicable law or regulation.

10

(iii)    it will take no action that may give rise to a third party's claim of a security interest in the Escrow Funds or any part thereof other than any such claim of the Bank.

14.    <u>Identifying Information</u>.  To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.  For a non-individual person such as a business entity, a charity, a trust or other legal entity, the Escrow Agent or the Bank requires documentation to verify its formation and existence as a legal entity.  The Escrow Agent or the Bank may require financial statements, licenses or identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.  The Service Provider agrees to provide all information requested by the Escrow Agent in connection with any legislation or regulation to which the Escrow Agent or the Bank is subject, in a timely manner.  The Escrow Agent's appointment and acceptance of its duties under this Agreement is contingent upon verification of all regulatory requirements applicable to the Service Provider, the Escrow Agent or the Bank and any of their permitted assigns, including successful completion of a final background check.  These conditions include, without limitation, requirements under the USA PATRIOT Act, the USA FREEDOM Act, the Bank Secrecy Act, and the U.S. Department of the Treasury Office of Foreign Assets Control.  If these conditions are not met, the Escrow Agent may at its option promptly terminate this Agreement in whole or in part, and refuse any otherwise permitted assignment by the Service Provider, without any liability or incurring any additional costs.

15.    <u>Notices</u>.  All notices, approvals, consents, requests and other communications hereunder must be in writing (provided that any communication sent to the Escrow Agent hereunder must be in the form of a document that is signed manually or by way of a DocuSign digital signature or electronic copy of either), in English, and may only be delivered (a) by personal delivery, or (b) by national overnight courier service, or (c) by certified or registered mail, return receipt requested, or (d) via email.  Notice will be effective upon receipt except for notice via email, which will be effective only when the recipient by return email acknowledges having received that email (with an automatically generated receipt or similar notice not constituting an acknowledgement of an email receipt for purposes of this Section).  Such notices may only be sent to the applicable party or parties at the address specified below:

If to the Service Provider, at:

> Newport Coast Law Group, P.C.
> [address]
> [address]
> E-mail: mark@newportcoastlaw.com

If to the Escrow Agent, at:

> Phoenix Corporate Recovery Services, LLC
> 110 Commons Court
> Chadds Ford, PA 19317
> E-mail: mjacoby@phoenixmanagement.com

or to such other address as each party may designate for itself by like notice and unless otherwise provided herein will be deemed to have been given on the date received.  The Service Provider agrees to assume all risks arising out of the use of DocuSign digital signatures and electronic methods to submit instructions and directions to the Escrow Agent, including without limitation the risk of the Escrow Agent acting on unauthorized instructions, and the risk of interception and misuse by third parties.

16.   <u>Amendment and Assignment</u>.  None of the terms or conditions of this Agreement may be changed, waived, modified, terminated or varied in any manner whatsoever unless in writing duly signed by each party to this Agreement.  No course of conduct will constitute a waiver of any of the terms and conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified.  No party may assign this Agreement or any of its rights or obligations hereunder without the written consent of the other parties, provided that if the Escrow Agent consolidates, merges, divides or converts into, or transfers all or substantially all of its assets (including the escrow contemplated by this Agreement) to another entity, the successor or transferee entity without any further act will be the successor the Escrow Agent.

17.   <u>Governing Law and Jurisdiction</u>.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS.  THE PARTIES HERETO HEREBY DECLARE THAT IT IS THEIR INTENTION THAT THIS AGREEMENT SHALL BE REGARDED AS MADE UNDER THE LAWS OF THE STATE OF DELAWARE AND THAT THE LAWS OF SAID STATE SHALL BE APPLIED IN INTERPRETING ITS PROVISIONS IN ALL CASES WHERE LEGAL INTERPRETATION SHALL BE REQUIRED.  EACH OF THE PARTIES HERETO AGREES (A) THAT THIS AGREEMENT INVOLVES AT LEAST $100,000.00, AND (B) THAT THIS AGREEMENT HAS BEEN ENTERED INTO BY THE PARTIES HERETO IN EXPRESS RELIANCE UPON 6 DEL. C. § 2708.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES TO BE SUBJECT TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF DELAWARE AND OF THE FEDERAL COURTS SITTING IN THE STATE OF DELAWARE, AND THAT SERVICE OF PROCESS MAY, TO THE FULLEST EXTENT PERMITTED BY LAW, BE MADE ON SUCH PARTY BY PREPAID CERTIFIED MAIL RETURN RECEIPT REQUESTED ADDRESSED TO THE PARTY AT THE ADDRESS SET FORTH IN THE "NOTICES" SECTION ABOVE (WITH A COURTESY COPY SENT TO THAT PARTY'S ATTORNEY VIA RECOGNIZED OVERNIGHT DELIVERY SERVICE) WITH A PROOF OF MAILING RECEIPT VALIDATED BY THE UNITED STATES POSTAL SERVICE CONSTITUTING EVIDENCE OF VALID SERVICE, AND THAT SERVICE MADE PURSUANT TO THE ABOVE SHALL, TO THE FULLEST EXTENT PERMITTED BY LAW, HAVE THE SAME LEGAL FORCE AND EFFECT AS IF SERVED UPON SUCH PARTY PERSONALLY WITHIN THE STATE OF DELAWARE.

18.   <u>Waiver of Jury Trial.</u>  EACH OF THE PARTIES HERETO EXPRESSLY, KNOWINGLY AND VOLUNTARILY WAIVES THE RIGHT TO TRIAL BY JURY IN RESOLVING ANY CLAIM OR COUNTERCLAIM RELATING TO OR ARISING OUT OF THIS AGREEMENT.

19.    Force Majeure.

(a)    Neither the Service Provider nor the Escrow Agent shall be responsible or incur any Losses for delays or failures in performance (or with respect to the Service Provider, the Mortgage Reconciliation Work) under this Agreement when such delay or failure to perform such services is caused by an information technology (i.e., IT) failure, communication line or linkage failure, applications failure, computer virus, power failure, earthquake, fire, explosion, flooding, act of god, civil disorder or disturbance, strike, lockout, vandalism, war, terror, riot or sabotage, or like causes beyond the reasonable control of the party failing to perform under this Agreement (any such event, a "Force Majeure Event").

(b)    If either party is reasonably prevented from or is delayed from performing under this Agreement (including with respect to the Service Provider the Mortgage Reconciliation Work) due to a Force Majeure Event or either party's rights or ability to perform under this Agreement are adversely affected by a Force Majeure Event, the affected party shall use all commercially reasonable efforts to remove the cause of the Force Majeure Event affecting such non-performance.  If a Force Majeure Event occurs and continues for a period of 45 days, the parties shall use commercially reasonable efforts to negotiate an equitable adjustment to their respective duties and obligations under this Agreement.  For any Force Majeure Event that occurs and continues for a period of less than 45 days and that prevents Service Provider from performing under this Agreement (or performing the Mortgage Reconciliation Work), the Service Provider shall still be entitled to its Monthly Fee and any other amounts owed to the Service Provider in accordance with this Agreement.

20.    Dispute Resolution.

(a)    In the event the Service Provider and the Escrow Agent fail to resolve the Escrow Agent's objection to a Monthly Statement under Section 4(c) or any other dispute arises under this Agreement, the parties shall promptly submit for resolution of such dispute to Mark D. Collins, in his capacity as an employee of Richards, Layton & Finger, P.A. ("RLF") and not in his individual capacity (the "Mediator"), provided, that in the event that Mark D. Collins refuses or is otherwise unable to act as the Mediator, the Service Provider and Escrow Agent shall cooperate in good faith to appoint a mediator that is mutually agreeable to the Service Provider and the Escrow Agent. Any fees incurred by a Mediator Party (as defined below) in connection with the Mediator serving as a mediator under this Section 20 will be billed at standard hourly billing rates and any out-of-pocket expenses incurred by a Mediator Party will be billed at cost.  The Mediator shall submit an invoice documenting all such fees and expenses, which the Escrow Agent shall disburse to the Mediator from the Escrow Account and the Escrow Funds.  Each party shall provide to the Mediator a statement setting forth the items in dispute and any necessary supporting documentation. The Mediator shall resolve each disputed item within the ranges proposed by the Escrow Agent and the Service Provider to resolve such disputed item.  All decisions by the Mediator shall be made no later than fifteen (15) days following the date of receipt by the Mediator of the statement with the items in dispute and the necessary supporting documentation from both parties and any such decision shall be final, non-appealable and binding on the parties.

(b)    The Service Provider and the Escrow Agent, shall jointly and severally indemnify and hold harmless the Mediator, RLF and each employee, representative or agent of RLF ("Mediator Party") upon demand against any and all claims, actions and proceedings (whether or not valid), losses, damages, liabilities, penalties, costs and expenses of any kind or nature (including without limitation reasonable attorneys' fees, costs and expenses) (collectively, "Mediator Losses") arising from this Agreement or the Mediator's actions hereunder, except to the extent such Mediator Losses are finally determined by a court of competent jurisdiction, which determination is not subject to appeal, to have been directly caused solely by the gross negligence or willful misconduct of a Mediator Party.  The obligations of the Service Provider and the Escrow Agent under this Section shall survive any termination of this Agreement.  Each of the Service Provider and the Escrow Agent fully, finally, voluntarily and unconditionally hereby irrevocably waives, releases, acquits and forever discharges each Mediator Party from any and all claims, actions, debts, liabilities, obligations, counterclaims, suits, causes of action, damages, demands, costs, expenses, and compensation of every kind and nature whatsoever, whether known or unknown, contingent or otherwise, liquidated or unliquidated, arising under this Agreement.

21.    Entire Agreement, No Third-Party Beneficiaries.  This Agreement constitutes the entire agreement between the signatory parties hereto relating to the holding, investment and disbursement of Escrow Funds and sets forth in their entirety the obligations and duties of Escrow Agent with respect to Escrow Funds.  This Agreement may be executed in two or more counterparts, which when so executed will constitute one and the same agreement or direction.  To the extent any provision of this Agreement is prohibited by or invalid under applicable law, such provision will be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  The Section headings have been inserted for convenience only and will be given no substantive meaning or significance whatsoever in construing the terms and conditions of this Agreement.  Nothing in this Agreement, express or implied, is intended to or will confer upon any person other than the signatory parties hereto, the Indemnified Parties, Mediator Parties, the Mediator the DIP Lender (with all such Persons being express third beneficiaries of this Agreement) any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

22.    Non-recourse.  Notwithstanding any provision contained in this Agreement to the contrary, except as otherwise provided for in Section 11, only recourse of any Party or any other Person for the failure of payment of any amounts due under this Agreement shall be limited to the Escrow Account and the Escrow Funds.

[signature page follows]

14

The parties hereto have caused this Agreement to be executed manually or by way of a Docusign digital signature effective as of the date first above written.

**SERVICE PROVIDER:**

**NEWPORT COAST LAW GROUP, P.C.**

By: _____

Name: _____

Title: _____

**ESCROW AGENT:**

**PHOENIX CORPORATE RECOVERY SERVICES, LLC**

By: _____

Name: _____

Title: _____

**SCHEDULE 1**

**FEES, EXPENSES AND REPORTING REQUIREMENTS**

Monthly Fees

The Mortgage Reconciliation Work shall be provided by Service Provider (or any Representative of the Service Provider) for a flat monthly fee of $130,000 (the "Monthly Fee") as compensation for reducing (i) the Static Inventory by at least 115 per month and (ii) any New Inventory by the lesser of 10 New Inventory items that are unresolved at the end of the prior month or 15% of the total New Inventory items that are unresolved at the end of the prior month (collectively, the "Monthly Service Threshold"). Such Monthly Fee includes voluntary and stipulated dismissals of claims filed against the Debtor or the Debtor's Estate. The projected workflow for Static Inventory reduction and estimated completion date is provided for in Attachment I hereto.

Additional Fees

In the event the Service Provider is unable to secure a voluntary or stipulated dismissal of claims filed against the Debtor or the Debtor's Estate and a general appearance in any proceeding before a governmental authority is required, the Service Provider shall provide such services for an hourly fee of $375 for attorneys and an hourly fee of $75 for paralegals with payment of such fees being made from the Escrow Funds.

Reimbursement of Expenses

Service Provider shall be reimbursed from the Escrow Funds for all expenses incurred in connection with the Mortgage Reconciliation Work, including, but not limited to, filing fees, county recorder fees, MERS fees, Westlaw fees, information database fees, photocopy costs, overnight delivery charges, and notary fees, all of which shall be billed at cost.

Reporting Requirements

Service Provider shall provide in each Monthly Statement the progress on reducing the Static Inventory and New Inventory, a listing of all inventory resolved during the relevant period, and the calculation of the Monthly Service Threshold. The Monthly Statement shall include the file numbers of the static inventory and the new inventory items that were resolved and included in the Monthly Service Threshold calculation. The Monthly Statement shall also contain sufficient detail to evidence the calculation of any hourly fees or expenses incurred during the period such Monthly Statement covers, and any other information or supporting documentation reasonably requested by Escrow Agent.